STATE of Wisconsin, Plaintiff-Respondent,

v.

Derik J. WANTLAND, Defendant-Appellant.†

Court of Appeals

*No. 2011AP3007–CR. Submitted on briefs September 25, 2012.
—Decided February 20, 2013.*

2013 WI App 36

(Also reported in 828 N.W.2d 885.)

† Petition for Review Filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Susan E. Alesia*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sarah K. Larson*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Gundrum, J.

¶ 1. GUNDRUM, J. Derik J. Wantland appeals from his judgment of conviction and the circuit court's denial of his motion to suppress evidence obtained as a result of a sheriff deputy's warrantless search of a briefcase located in a vehicle during a traffic stop. Wantland contends the search was unreasonable, and therefore unlawful under the Fourth Amendment, because he limited the scope of the driver's prior consent to search the vehicle by asking "Got a warrant for that?" when the deputy got to the briefcase during the search. We conclude that the circuit court correctly found that Wantland did not limit the driver's consent to search

because a reasonable person considering the totality of the circumstances would not have interpreted the exchange between Wantland and the deputy as Wantland clearly and unequivocally identifying himself as the owner of the briefcase and objecting to the search of it. We further reject Wantland's alternative position that if the deputy was uncertain whether Wantland owned the briefcase and was objecting to the search of it, it was unreasonable for him to search it without seeking clarification. The deputy's search of the briefcase pursuant to the driver's consent was reasonable. We affirm.

## BACKGROUND

¶ 2. The deputy was the only witness to testify on the motion to suppress. In deciding the motion, the circuit court considered that testimony as well as relevant portions of a video from the deputy's squad car. The following facts are undisputed on appeal.

¶ 3. The deputy performed a traffic stop on a vehicle in which Wantland was a passenger. The driver, Wantland's brother, consented to a search of the vehicle and placed no relevant limitation on the scope of that consent. The driver and Wantland exited the vehicle and remained close to the rear of it for all pertinent aspects of the deputy's search. After searching the front and center areas of the vehicle, the deputy opened the hatchback and continued the search. When he got to a briefcase, he asked the men what was inside it. Wantland responded with "a laptop" and "Got a warrant for that?" The deputy indicated that he (the deputy) could open the briefcase. Wantland laughed and remarked that the briefcase also contained Visine and antacid pills. The deputy opened the briefcase and found Visine, one empty antacid pill bottle, and one antacid pill bottle with two pills in it which appeared inconsistent with

the type of pills that belonged in the bottle. The pills were later identified as morphine, and the deputy found documents in the briefcase identifying Wantland as the owner. Wantland was arrested and additional morphine pills were found on him at the jail.

¶ 4. Wantland was charged with possession of a narcotic drug, and he moved to suppress the evidence. The circuit court denied the motion after finding that the driver properly authorized the search and that Wantland's warrant question did not constitute a limitation on that consent. Wantland entered a plea and now appeals. Additional facts are included below as necessary.

## DISCUSSION

¶ 5. The Fourth Amendment to the United States Constitution does not prohibit all state-initiated searches, but only those that are unreasonable. *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). Warrantless searches are per se unreasonable. *State v. Matejka*, 2001 WI 5, ¶ 17, 241 Wis. 2d 52, 621 N.W.2d 891. A warrantless search conducted pursuant to voluntary consent, however, is one of the well-established exceptions to the warrant requirement. *State v. Wallace*, 2002 WI App 61, ¶ 17, 251 Wis. 2d 625, 642 N.W.2d 549, *overruled on other grounds by State v. Popenhagen*, 2008 WI 55, 309 Wis. 2d 601, 749 N.W.2d 611. Whether a law enforcement officer was given consent to search and whether subsequent words or actions limited the scope of that consent are questions of fact we review for clear error. *See Wallace*, 251 Wis. 2d 625, ¶¶ 16, 35–37; *State v. Stankus*, 220 Wis. 2d 232, 244, 582 N.W.2d 468. However, the ultimate question of whether a search was

reasonable, and therefore lawful under the Fourth Amendment, is a question of law we review de novo. *Wallace*, 251 Wis. 2d 625, ¶ 8.

¶ 6. On appeal, Wantland does not dispute the circuit court's determination that the driver properly authorized the deputy's search of the vehicle. Rather, he argues that the warrantless search of his briefcase violated the prohibition against unreasonable searches because he limited the driver's consent to search the vehicle as it related to the briefcase by asking "Got a warrant for that?" when the deputy got to that item during the search.

¶ 7. In determining whether Wantland limited the driver's consent, we do not consider the warrant question alone. Rather, we consider what a reasonable person would have understood by the entirety of the exchange between Wantland and the deputy under the circumstances. *See Jimeno*, 500 U.S. at 251; *Matejka*, 241 Wis. 2d 52, ¶¶ 38–39; *State v. Tomlinson*, 2001 WI App 212, ¶ 14, 247 Wis. 2d 682, 635 N.W.2d 201; *see also United States v. Gregoire*, 425 F.3d 872, 881 (10th Cir. 2005); *Payton v. Commonwealth*, 327 S.W.3d 468, 477 (Ky. 2010).

¶ 8. We note first that there is no suggestion in the record or by Wantland that the briefcase was locked or that there were any distinctive markings or tags on the outside that would have indicated that it belonged to Wantland instead of the consenting driver. *See Jimeno*, 500 U.S. at 251–52 (concluding as reasonable the search of a closed paper bag within a vehicle where one with authority consented to the search of the vehicle; but noting that "breaking open . . . a locked briefcase" very likely unreasonable); *Matejka*, 241 Wis. 2d 52, ¶ 36 (suggesting a "locked" suitcase or briefcase "might

give rise" to a different Fourth Amendment analysis); *United States v. Melgar*, 227 F.3d 1038, 1041–42 (7th Cir. 2000) (search of a closed container in an area where one with authority has given police consent to search the area is permissible "if the police do *not* have reliable information that the container is *not* under the authorizer's control"). Further, when the deputy got to and inquired about the briefcase, Wantland did not respond with words of greater clarity such as "That's mine, please don't open it," but instead responded with "Got a warrant for that?" While this question could be interpreted as an objection to searching the briefcase, as Wantland suggests, it also could be interpreted by a reasonable person as inquiring whether the deputy in fact had a warrant or, more likely under the circumstances here, as a more general inquiry into whether the deputy had lawful authority to search the briefcase. By itself, this question was not an unambiguous declaration of ownership of the briefcase or objection to the search of it. When accompanied by laughter and a continued identification of items the deputy could expect to find in searching the briefcase, the meaning of Wantland's warrant question became even less clear.

¶ 9. To effectively limit the consent to search previously given by the driver, Wantland needed to clearly and unequivocally assert that he, not the driver, was the owner of the briefcase and that he was objecting to the search of it. *See United States v. Sanders*, 424 F.3d 768, 774–75 (8th Cir. 2005) ("Withdrawal of consent need not be effectuated through particular 'magic words,' but an intent to withdraw consent must be made by unequivocal act or statement." (Citation omitted.)); *United States v. Alfaro*, 935 F.2d 64, 67 (5th Cir. 1991); *Payton*, 327 S.W.3d at 477–78 (revocation of a third party's consent to a search must be clear).

Wantland's exchange with the deputy did not amount to such an assertion. A reasonable person would not expect a clear and unequivocal (and serious) identification of one's self as the owner of personal property about to be searched and objection to the search of the property to be made with a question such as "Got a warrant for that?" accompanied by laughter[1] and a continued identification of items the deputy could expect to find in searching the briefcase.[2] *See Payton*, 327

[1] While the circuit court made no specific finding regarding Wantland's laughter, both parties agree he laughed. The deputy characterized the nature of the laughter twice in his testimony, first as "kind of laughing" and later as "laughing and joking around." Wantland provided no testimony or argument before the circuit court regarding the laughter, but on appeal characterizes it in his reply brief as "nervous laughter." Regarding the video evidence the circuit court reviewed, we note from our review that Wantland is not visible during the exchange related to the briefcase. Further, the audio quality is such that we are unable to clearly hear all aspects of the exchange between Wantland and the deputy. We are able, however, to discern, though barely, sound which could be laughter immediately following Wantland's warrant question.

[2] Wantland does not argue that his itemization of what was in the briefcase should have further indicated that he was its owner. Because we are considering the totality of the circumstances and the context of the warrant question, however, we nonetheless address this issue here.

We note first that while Wantland's ability to itemize what might be found in the briefcase could be considered an indication that he was its owner, Wantland could have known about the contents without being the owner. Further, the deputy would not have been able to confirm the truth or accuracy of the itemization without opening and searching the briefcase. To the extent this itemization would be considered by a reasonable person as suggesting ownership, we agree with the State's contention that Wantland's continued itemization of specific, lawful items the deputy could expect to find in the briefcase

687

S.W.3d at 478 (concluding that, considering the totality of the circumstances, the defendant's exchange with officers, which included the question "Where's your warrant?" did not constitute revocation of his wife's consent to search their home). The circuit court correctly found that Wantland did not limit the driver's consent to search the vehicle.[3]

■

¶ 10. Wantland alternatively contends the search was unreasonable because the deputy did not respond to Wantland's warrant question by stopping the search and investigating whether Wantland owned the briefcase and was objecting to the search of it. He argues that, if ambiguity exists, the burden should be on the searching officer to seek clarification. We disagree.

■

¶ 11. A roadside vehicle search often presents numerous challenges and dangers (such as inclement weather, darkness, and other vehicles traveling on the roadway) for officers, the waiting motorists, and others. Officers no doubt can be faced with the additional challenge of dealing with waiting motorists frustrated by the search. Officers need to be able to perform such a search as expeditiously as possible to minimize risks and delay. Placing the burden upon an officer involved in a consensual roadside vehicle search to clarify a

likely would be viewed as an indication by Wantland that he had nothing to hide and thus was not objecting to the search.

[3] In arguing that his warrant question was the equivalent of a declaration of ownership of the briefcase, Wantland cites to *State v. Suazo*, 627 A.2d 1074 (N.J. 1993). *Suazo* does not help Wantland, however, because the defendant passenger in that case explicitly stated to the searching officer that the bag in question was his. *Id.* at 1075. There is no dispute that Wantland never made such an unambiguous statement.

passenger's vague and ambiguous comments about individual items within the vehicle would run contrary to these important considerations. Where, as here, the owner of individual property located in a vehicle is present during a consensual search and fails to clearly and unequivocally assert his or her ownership of the property and objection to the search of it, it is not unreasonable for the searching officer to continue the search, including of the individual item, without seeking clarification. *See, e.g., Matejka,* 241 Wis. 2d 52, ¶ 37 (reasonableness of search of passenger's jacket strengthened by the fact passenger was present for consensual search of vehicle but failed to circumscribe scope of search to exclude the jacket); *United States v. West,* 321 F.3d 649, 652 (7th Cir. 2003) (concluding that passenger's acknowledgement that he owns item which is not coupled with revocation of the driver's consent "could well be thought an affirmation that the officers ha[ve] [passenger's] consent to search it.").

## *CONCLUSION*

¶ 12. Wantland failed to clearly and unequivocally assert his ownership of the briefcase and objection to the search of it. Thus, the circuit court correctly found that Wantland did not limit the driver's consent to search the vehicle so as to exclude the briefcase from the search. The deputy's search of the briefcase pursuant to the driver's consent, and without stopping to investigate or clarify whether Wantland owned it and was objecting to the search of it, was reasonable.

*By the Court.*—Judgment affirmed.