ANNETTE KINGSLAND ZIEGLER, J.
¶ 1. This is a review of a decision of the court of appeals, State v. Wantland, 2013 WI App 36, 346 Wis. 2d 680, 828 N.W.2d 885, that affirmed the judgment and order of the Sheboygan County Circuit Court,[1] which convicted De *140 rik J. Wantland ("Wantland") of possession of a narcotic and denied his motion to suppress evidence.
¶ 2. Both the State and Wantland concede that the driver consented to the search of the vehicle in which the briefcase was located, and concede that the driver's consent was not limited in a way that would have excluded the briefcase from the search.[2] Wantland's petition for review and argument assume that the driver's general consent to search was not limited until Wantland, the passenger, asked the officer whether he had a warrant for the briefcase. Thus, this opinion addresses not whether the officer had the driver's general consent in the first instance, but rather, we address whether Wantland's question limited that consent.[3]
*141 ¶ 3. Wantland argues that the warrantless search of his briefcase, which led to the discovery of the narcotics, was unreasonable and therefore violated his rights under the Fourth Amendment. Wantland contends that he asserted ownership of the briefcase and withdrew the driver's consent by asking "Got a warrant for that?" of the police officer who was conducting the search. He further argues that the police officer had a duty to ask follow-up questions to clarify any ambiguity once Wantland asked his question.
¶ 4. The State argues that Wantland's question "Got a warrant for that? was too ambiguous to constitute a withdrawal of the driver's consent. The State further contends that the officer was under no duty to clarify Wantland's question.
¶ 5. We conclude that Wantland did not effectively withdraw the driver's consent when he asked "Got a warrant for that?" Further, we conclude that police officers confronted with ambiguous statements, such as Wantland's, are not under a duty to ask follow-up questions to clarify the ambiguity. As a result, we conclude that the search of the briefcase was reasonable under the circumstances, and we affirm the decision of the court of appeals.
I. FACTUAL BACKGROUND
¶ 6. On August 26, 2010, Sheboygan County Sheriffs Deputy Jason Brockway ("Deputy Brockway") stopped a vehicle in Random Lake, Wisconsin, for driving with a cracked windshield and a defective brake light. The vehicle was being driven by Wantland's *142 brother, Dennis Wantland ("the driver").[4] Wantland was riding in the front passenger seat of the vehicle.
¶ 7. After issuing a written warning, Deputy Brockway asked the driver to step out of the car so that he could show him the brake light and explain why driving with a cracked windshield was dangerous. Deputy Brockway then informed the driver that he was free to leave. After walking back to his squad car, Deputy Brockway turned and asked the driver if there was "anything in the vehicle that wasn't supposed to be in the vehicle."[5] When the driver responded that he did not believe there was, Deputy Brockway asked if he could search the car.[6] The driver responded "Um, I don't see why not. We gotta get our tools and stuff out anyway." Deputy Brockway then asked both men to step out of the vehicle and wait by the curb while he performed the search.
¶ 8. During Deputy Brockway's search of the passenger compartment of the vehicle, he noted some razor *143 blades and asked what they were for. The driver replied, "we got these little, urn, utility knives that we use they're for— painting the windows and stuff, [it's] easier to just paint over the trim then come back."
¶ 9. After searching the passenger compartment, Deputy Brockway opened the back hatch of the vehicle and observed a variety of tools and toolboxes, along with a briefcase. Deputy Brockway asked what was in the briefcase. Wantland responded, "A laptop. Uh. Got a warrant for that?" Deputy Brockway responded, "I can open up the, uh, laptop" and proceeded to remove the briefcase from the vehicle. Wantland then recounted the contents of the briefcase, stating "Yeah, it's uh, laptop, Visine, acid reflux."
¶ 10. During his search of the briefcase, Deputy Brockway discovered pills that appeared to be inconsistent with the bottle in which they were found.[7] A second officer, called in by Deputy Brockway for his expertise in identifying narcotics, verified that the pills were morphine. The briefcase also contained letters and personal papers with Wantland's name on them. At that point, Deputy Brockway arrested Wantland and informed him of his Miranda rights. See Miranda v. Arizona, 384 U.S. 436 (1966). A search incident to Wantland's arrest revealed two additional morphine pills concealed in some loose tobacco in Wantland's pocket.
II. PROCEDURAL POSTURE
¶ 11. On January 27, 2011, the State filed a complaint charging Wantland with possession of narcotic drugs without a prescription, as a repeater, con *144 trary to Wis. Stat. §§ 961.41(3g)(am) and 939.62(1)(b) (2011-12).[8] On February 14, 2011, Wantland made his initial appearance, waived a reading of the complaint, and requested a preliminary hearing. The court set Wantland's signature bond at $5,000. On February 23, 2011, the court held a preliminary hearing, found probable cause to bind Wantland over for trial, and the State filed an information which alleged the same charge against Wantland. On March 25, 2011, Wantland was arraigned on the information and pled not guilty.
¶ 12. On April 5, 2011, Wantland filed amotion to suppress the evidence uncovered during Deputy Brockway's search of the briefcase.[9] On April 12, 2011, the circuit court held a hearing on Wantland's motion.[10] At the hearing, Wantland argued that there was no valid consent to search the vehicle because the circumstances of the stop were coercive. Alternatively, Want-land argued that his question "Got a warrant for that?" was sufficient to withdraw any consent that may have been given. The State argued that the driver's consent to search the vehicle was valid and was not limited in any way, and that Wantland's question was not sufficient to withdraw the original consent.
*145 ¶ 13. On May 2, 2011, the circuit court denied Wantland's motion to suppress. The court concluded that the initial consent was voluntary and was not the result of any coercion or show of force on the part of Deputy Brockway. The court further concluded Wantland's question did not withdraw the driver's original consent.
¶ 14. On May 3, 2011, Wantland pled no contest to the charge pursuant to a plea agreement. In exchange for his plea, the State agreed to recommend 18 months' probation. The circuit court accepted Wantland's plea, found him guilty, and accepted the State's recommendation with regard to sentencing.
¶ 15. On December 21, 2011, Wantland appealed. Before the court of appeals, Wantland narrowed the issue and argued that the circuit court erred in denying his motion to suppress because his question "Got a warrant for that?" effectively withdrew the general consent his brother had given Deputy Brockway. The State again contended that, as the driver of the vehicle, the driver had apparent authority to consent to a search, and that Wantland's subsequent question did not withdraw that consent.
¶ 16. On February 20, 2013, the court of appeals affirmed the circuit court. Wantland, 346 Wis. 2d 680, ¶ 1. The court of appeals determined that, under the totality of the circumstances, a reasonable person would not have understood Wantland's question to be a withdrawal of his brother's general consent to search the vehicle. Id., ¶¶ 8-9. As a result, the court of appeals concluded that the search was legal and upheld the circuit court's denial of Wantland's motion to suppress. Id., ¶ 12.
*146 ¶ 17. On March 22, 2013, Wantland petitioned this court for review, which we granted on November 21, 2013.
III. STANDARD OF REVIEW
¶ 18. "Our review of an order granting or denying a motion to suppress evidence presents a question of constitutional fact." State v. Robinson, 2010 WI 80, ¶ 22, 327 Wis. 2d 302, 786 N.W.2d 463 (citing State v. Hughes, 2000 WI 24, ¶ 15, 233 Wis. 2d 280, 607 N.W.2d 621).
¶ 19. "When presented with a question of constitutional fact, this court engages in a two-step inquiry." Id. (citations omitted); see also State v. Popke, 2009 WI 37, ¶ 10, 317 Wis. 2d 118, 765 N.W.2d 569. "First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous. Second, we independently apply constitutional principles to those facts." Id. (citations omitted).[11]
IV ANALYSIS
¶ 20. "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." Florida v. Jimeno, 500 U.S. 248, 250 (1991) (citing Illinois v. Rod *147 riguez, 497 U.S. 177 (1990)). The United States Supreme Court has "long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." Id. at 250-51 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)). Thus, "a search conducted pursuant to a valid consent is constitutionally permissible." Schneckloth, 412 U.S. at 222; see also Wis. Stat. § 968.10(2).
¶ 21. "The scope of a search is generally defined by its expressed object." Jimeno, 500 U.S. at 251 (citing United States v. Ross, 456 U.S. 798 (1982)). "One who consents to a search 'may of course delimit as he chooses the scope of the search to which he consents.'" State v. Matejka, 2001 WI 5, ¶ 37, 241 Wis. 2d 52, 621 N.W.2d 891 (quoting Jimeno, 500 U.S. at 252). "But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." Jimeno, 500 U.S. at 252.
¶ 22. Further, "[t]he Supreme Court long ago held that officers may conduct warrantless searches based upon a third-party's consent, where the third party has common authority over the premises to be searched." Matejka, 241 Wis. 2d 52, ¶ 19 (citing United States v. Matlock, 415 U.S. 164, 169-71 (1974)).
¶ 23. Before consent may operate as a valid exception to the warrant requirement, two conditions must be met. First, the consent must have been "freely and voluntarily given." Bumper v. North Carolina, 391 U.S. 543, 548 (1968). Second, the consent must be given by an individual having either actual or apparent author *148 ity over the place to be searched. See Rodriguez, 497 U.S. at 181 (citing Matlock, 415 U.S. at 171).
¶ 24. In the case at issue, the parties agree that the driver voluntarily consented to a search of the vehicle. It is thus undisputed that the consent was neither mere acquiescence to a claim of lawful authority nor obtained through coercion. See, e.g., United States v. Mendenhall, 446 U.S. 544, 558 (1980); State v. Johnson, 2007 WI 32, ¶ 17, 299 Wis. 2d 675, 729 N.W.2d 182. The parties also agree that the driver had actual authority over the vehicle, and thus his consent to search the vehicle was valid. Schneckloth, 412 U.S. at 222. Further, Wantland concedes that the driver did not limit the scope of the initial consent. In other words, he concedes that a reasonable person would have understood the initial consent given by the driver to extend to all containers within the vehicle, including the briefcase.
¶ 25. In sum, Wantland and the State agree that, absent Wantland's question, Deputy Brockway's search of the briefcase would have been constitutionally permissible. Thus, the focus of our attention rests upon whether Wantland's question "Got a warrant for that?" effectively withdrew the driver's consent.
¶ 26. Wantland argues that once he asked his question "Got a warrant for that?" the officer's search of his briefcase was unreasonable. Wantland contends that his question undermined the driver's apparent authority and constituted a withdrawal of the driver's original consent to search the briefcase. Alternatively, Wantland argues that Deputy Brockway had a duty to ask follow-up questions to resolve any ambiguity. We reject these arguments and affirm the court of appeals.
*149 A. Wantland Did Not Withdraw Consent
¶ 27. Third-party consent to a search may be valid, so long as " 'permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to he inspected.'" Matejka, 241 Wis. 2d 52, ¶ 32 (emphasis in Matejka) (quoting Matlock, 415 U.S. at 171). In the context of an automobile, this court has held that the common authority inquiry "focuses not necessarily on the third-party's authority over the specific object in question, but the third-party's authority over the premises in which that object is located." Id., ¶ 36.
¶ 28. The driver of a vehicle has "obvious possessory authority over the vehicle and therefore the capacity to consent to its search." Id., ¶ 35. Further, "by virtue of the joint access and mutual use of the interior" of the vehicle, the driver has apparent authority to consent to a search of the belongings of any passengers in the vehicle. Id. This accords with the general proposition that "consent to search a space includes consent to search containers within that space where a reasonable officer would construe the consent to extend to the container." United States v. Melgar, 227 F.3d 1038, 1041 (7th Cir. 2000) (citing Jimeno, 500 U.S. at 251).
¶ 29. In the case at issue, it is undisputed that Deputy Brockway obtained consent to search for "anything in the vehicle that wasn't supposed to be in the vehicle." A reasonable officer would construe this as a general consent that extends to containers. See, e.g., United States v. Canipe, 569 F.3d 597, 600 (6th Cir. 2009) (determining that a request to look for " 'any *150 thing' in [a] vehicle that might be unlawful or about which [the officer] needed to know" was a request for general consent to search); United States v. Crain, 33 F.3d 480, 483-84 (5th Cir. 1994) (determining that a request to "look inside" a vehicle, without any further explanation, was a request for general consent to search). "It is self-evident that a police officer seeking general permission to search a vehicle is looking for evidence of illegal activity. It is just as obvious that such evidence might be hidden in closed containers." Canipe, 569 F.3d at 605 (quoting United States v. Snow, 44 F.3d 133, 135 (2d Cir. 1995)); see also Crain, 33 F.3d at 484.
¶ 30. The driver gave Deputy Brockway valid consent to search containers in the vehicle, and the driver had apparent authority over those containers at the time consent was given.[12]
¶ 31. Wantland argues, however, that his question "Got a warrant for that?" undermined the driver's apparent authority over the briefcase, and should have led Deputy Brockway to conclude that he had withdrawn the driver's consent to its search.
¶ 32. Wantland points to a number of cases where the apparent authority of a driver did not extend to items in the vehicle that belonged to passengers. See United States v. Munoz, 590 F.3d 916, 922-23 (8th Cir. 2010); United States v. Welch, 4 F.3d 761, 765 (9th Cir. 1993) modified, United States v. Kim, 105 F.3d 1579, 1580-81 (9th Cir. 1997); State v. Suazo, 627 A.2d 1074 (N.J. 1993); State v. Williams, 616 P.2d 1178 (Or. Ct. App. 1980). Munoz, Welch, and Williams, however, *151 address whether initial consent was valid, not whether consent was later withdrawn. These cases do not support Wantland's claim that the officer, who had consent to search, should have known that Wantland's later question, "Got a warrant for that?" was a sufficiently clear assertion of ownership so to inform Deputy Brock-way that the consent to search the briefcase was withdrawn.[13] In addition, Suazo is factually distinct from the case at issue because in that case the passenger unequivocally stated that the item at issue belonged to him and not the driver.[14] In fact, mere assertion of ownership of an item may be insufficient to constitute withdrawal of consent. See, e.g., United States v. West, 321 F.3d 649, 652 (7th Cir. 2003) (holding that the lawfulness of the search turned not on whether the defendant owned the item searched, but rather turned on whether he withdrew consent). Because Wantland concedes that the initial consent was valid, the issue *152 before this court turns on whether Wantland's question "Got a warrant for that?" served to unequivocally withdraw that consent.
¶ 33. " 'Withdrawal of consent need not be effectuated through particular "magic words," but an intent to withdraw consent must be made by unequivocal act or statement.'" United States v. Sanders, 424 F.3d 768, 774 (8th Cir. 2005) (quoting United States v. Gray, 369 F.3d 1024, 1026 (8th Cir. 2004)); see also United States v. Alfaro, 935 F.2d 64, 67 (5th Cir. 1991); Payton v. Commonwealth, 327 S.W.3d 468, 478 (Ky. 2010). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Jimeno, 500 U.S. at 251 (citing Rodriguez, 497 U.S. at 183-89; Florida v. Royer, 460 U.S. 491, 501-02 (1983)).
¶ 34. Unequivocal acts or statements sufficient to constitute withdrawal of consent may include slamming shut the trunk of a car during a search, see United States v. Flores, 48 F.3d 467, 468 (10th Cir. 1995), grabbing back the item to be searched from the officer, see United States v. Ho, 94 F.3d 932, 934 (5th Cir. 1996), and shouting "No wait" before a search could be completed, see United States v. Fuentes, 105 F.3d 487, 489 (9th Cir. 1997).
¶ 35. By contrast, Wantland's inquiry "Got a warrant for that?" was equivocal, such that it did not clearly withdraw the otherwise valid consent of his brother, the driver. Wantland did not ask the officer to stop the search as the vehicle owner did in Fuentes. He did not take action to prevent the officer from accessing the *153 briefcase, as the items' owners did in Flores and Ho. Rather, Wantland did little to indicate that he owned the briefcase and that the officer was not free to search the briefcase. In fact, case law does not support the notion that Wantland's question, "Got a warrant for that?" was sufficient to constitute a withdrawal of consent.
¶ 36. Payton v. Commonwealth illustrates why Wantland's question did not constitute a withdrawal of consent. In Payton police officers received valid consent to search a residence from the suspect's wife. 327 S.W.3d at 470. When officers entered the bedroom in which the defendant was sitting, Payton immediately asked, "where's your warrant?" Id. at 476. When the officers informed the defendant that his wife had consented to the search, he responded, " 'Fine' or 'Well, okay.'" Id. at 470. The officers subsequently discovered methamphetamine hidden in the bedroom. Id. at 471.
¶ 37. At trial Payton sought to suppress the methamphetamine, arguing that when he asked "where's your warrant?" he withdrew his wife's consent to search the house. Id. The court denied his motion and the defendant appealed. Id.
¶ 38. The Supreme Court of Kentucky affirmed the trial court's denial of the motion to suppress. Id. at 470. The Kentucky Supreme Court concluded that the defendant "cannot be said to have 'unequivocally refused' consent by his asking 'where's your warrant' and then saying 'fine' or 'well, okay' after being told his wife had already consented to a search." Id. at 478. The court distinguished the facts before it from other cases in which a defendant "unequivocally refuse [s]" to consent to a search. Id. (citing Georgia v. Randolph, 547 U.S. 103, 107 (2006)).
*154 ¶ 39. Notably, Wantland's warrant question was almost identical to the question asked by the suspect in Payton. Also similar to the conversation in Payton, Wantland's question was immediately followed by statements that were conversational rather than an unequivocal indication that the officer should cease the search. Instead of denying access to the briefcase, Wantland explained what the officer would find inside the briefcase. Additionally, unlike the defendant in Payton, who responded as soon as he became aware of the consent to search, Wantland was present at the time the original consent was given and did not object to that consent. Instead, Wantland stayed quiet throughout the search of the passenger compartment of the vehicle and did not ask any question or make any comment until Deputy Brockway reached for the briefcase. Even then it was far from clear that Wantland was telling the officer that he could no longer search the briefcase. Given these facts, under the totality of the circumstances, a reasonable person would not understand Wantland's question to be an unequivocal withdrawal of an otherwise valid consent to search the briefcase.
¶ 40. Similarly, in United States v. Gray, the Eighth Circuit concluded that a defendant's expression of frustration with the length of time the search was taking and a stated desire to leave was not sufficient to constitute a withdrawal of his previous consent to search. 369 F.3d at 1026. The court held that that "intent to withdraw consent must be made by unequivocal act or statement." (citing United States v. Ross, 263 F.3d 844 (8th Cir. 2001)). Gray's statement that the length of the search was "ridiculous" and that he and his companion were "ready to go now" "amounted to an expression of impatience, which is not sufficient to terminate consent." Id. (citing 263 F.3d at 846). *155 Wantland's remarks were even more equivocal than those made by Gray, in that Gray at least referenced a desire to depart the scene.
¶ 41. Similar ambiguous statements were deemed insufficient to constitute a withdrawal of a previous consent to search in United States v. Gregoire, 425 F.3d 872, 881 (10th Cir. 2005). In Gregoire the driver had consented to a search of his vehicle but later stated, "I [was] planning to be home" and "[i]sn't that illegal" as the search progressed. Id. The Tenth Circuit concluded that these statements were too ambiguous to constitute withdrawal of the driver's original consent to search. Id. Unlike Gregoire Wantland did not imply that he wanted to leave, and he did not clearly indicate that he believed the search was illegal.
¶ 42. Under the analysis of these cases, Wantland's question "Got a warrant for that?" must be deemed ambiguous. Such a question may constitute an inquiry regarding the officer's lawful authority to search the briefcase, but it is far from an unequivocal withdrawal of consent. Deputy Brockway's response, "I can, uh, open the laptop," was responsive to Wantland as Deputy Brockway already had legal authority for the search from the driver. Moreover, Wantland's listing out the contents of the briefcase failed to clearly indicate that Deputy Brockway no longer had consent to search the briefcase.
¶ 43. Further, the driver initially made numerous statements to Deputy Brockway clarifying which items in the vehicle belonged to the occupants jointly. For example, the driver stated, "We gotta get our tools and stuff out anyway" in responding to the initial request for consent. (Emphasis added). Further, in response to a question from Deputy Brockway about the razor blades in the vehicle, the driver replied, "we got these *156 little, um, utility knives that we use." (Emphasis added). Wantland said nothing to indicate that other items may belong to him alone. Thus, to the extent that a reasonable officer would conclude that some of the items in the vehicle did not belong solely to the driver, that indication related, at most, to the tools and knives and not the briefcase.[15] Notably, Wantland never made any statement to the effect that the briefcase was not to be searched. In fact, prior to asking "Got a warrant for that?" Wantland had said nothing at all about the briefcase or any other item in the vehicle. Nothing in the plain question "Got a warrant for that?" would have unequivocally indicated to a reasonable person that consent to search the briefcase had been withdrawn.
¶ 44. Hence, a reasonable person considering the totality of the circumstances would not understand Wantland's inquiry to be an unequivocal withdrawal of consent. See Jimeno, 500 U.S. at 251; Sanders, 424 F.3d at 774. Thus, Deputy Brockway's search of the briefcase was reasonable.
B. Officer's Duty To Inquire
¶ 45. Finally, Wantland argues that where ownership or authority over a closed container is unclear, police officers are under a duty to make further inquiry to resolve the ambiguity before proceeding with a *157 search. We conclude that law enforcement is not under such a duty to further inquire.
¶ 46. The Seventh Circuit has held that once police have received consent to search the premises from a person with apparent authority, they may rely on that authority to search closed containers without further inquiry, unless they encounter an item which they "have reliable information... is not under the authorizer's control." United States v. Melgar, 227 F.3d 1038, 1041 (7th Cir. 2000) (emphasis in original). The court noted that "[a] contrary rule would impose an impossible burden on the police." Id. at 1042.
¶ 47. We agree. Once valid consent for a search has been secured, law enforcement officers are not required to halt their search and question whether consent is still valid every time a person makes an ambiguous statement regarding the ownership of an item that is otherwise within the scope of that consent.[16] See Frazier v. Cupp, 394 U.S. 731, 740 (1969) (holding that the court would not engage in "metaphysical subtleties" in determining the efficacy of a third party's consent). Such a rule would place an onerous and unreasonable burden on law enforcement, particularly given that the true owner of the property may or may not be present. See, e.g., Matlock, 415 U.S. at 166-67. Thus, an officer need not clarify whether an ambiguous statement is meant to withdraw otherwise *158 valid consent to search. Melgar, 227 F.3d at 1041; see also Matejka, 241 Wis. 2d 52, ¶ 32 (quoting Matlock, 415 U.S. at 171).
V CONCLUSION
¶ 48. We conclude that Wantland did not effectively withdraw the driver's consent when he asked, "Got a warrant for that?" Further, we conclude that police officers confronted with ambiguous statements, such as Wantland's, are not under a duty to ask follow-up questions to clarify the ambiguity. As a result, we conclude that the search of the briefcase was reasonable under the circumstances, and we affirm the decision of the court of appeals.

By the Court.

The decision of the court of appeals is affirmed.

 The Honorable Timothy M. Van Akkeren presided.

 Indeed, Wantland's petition for review framed the issue as whether "[w]hen the passenger asks 'got a warrant for that?[1] before the officer opens a briefcase found in the hatchback of the car, has the driver's general consent to search the car been limited?" This statement of the issue clearly assumes that the driver's initial consent to search was valid and extended to the briefcase. Wantland framed his argument almost identically in his brief, arguing that his question "effectively limited the driver's general consent to search the car." The State noted the concession, stating "[t]his case is not about the validity of the original consent to search the entire vehicle ... [a]s Wantland concedes . . . the valid, unambiguous, unlimited, general consent to search the vehicle was given by someone with authority to consent- — the brother." Wantland did not object to this characterization of his position in his reply brief or at oral argument.

 Chief Justice Abrahamson's dissent chooses to address an issue that is not relevant to why we accepted the petition for review. In fact, the issue of whether the driver's initial consent to search was valid is the subject of long settled law, see State v. Matejka, 2001 WI 5, ¶ 19, 241 Wis. 2d 52, 621 N.W.2d 891, and therefore would constitute mere error correction inappropriate for our review. See Wis. Stat. § 809.62(1r)(a) (2013-14).

 During the course of the search, Dennis Wantland informed Deputy Brockway that the vehicle was actually registered to his sister-in-law.

 An officer making this this type of statement is seeking general consent to search, rather than requesting permission to search for a certain item or items. United States v. Canipe, 569 F.3d 597, 605 (6th Cir. 2009).

 The police procedure whereby "a police officer attempts to obtain a person's consent to a search even though the officer has no legal basis to further detain the person" has been deemed acceptable. State v. Kolk, 2006 WI App 261, ¶ 23 n.7, 298 Wis. 2d 99, 726 N.W.2d 337. This court has held that, so long as "a reasonable person would have felt free to decline the officer's questions and leave the scene, or otherwise terminate the encounter," such consent is a valid exception to the warrant requirement. State v. Williams, 2002 WI 94, ¶ 35,255 Wis. 2d 1, 646 N.W.2d 834; see also State v. Jones, 2005 WI App 26, ¶¶ 9-10, 278 Wis. 2d 774, 693 N.W.2d 104.

 The label indicated that the pill bottle should contain 40mg antacid pills, but the pills Deputy Brockway discovered were marked "30mg."

 All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

 Wantland also filed motions to suppress the fruits of his detention and to suppress any statements he made following his arrest. Wantland admitted before the circuit court that these additional motions were "all connected to the search of the vehicle." Because we conclude that the search in this case was reasonable, and because Wantland did not raise these issues in his petition for review, we need not address these arguments.

 Due to scheduling conflicts, the motion hearing had to be continued twice. Additional testimony was taken on April 20, 2011, and counsel presented brief arguments before the court's ruling on May 2, 2011.

 In the case at issue the historical facts are undisputed. Therefore, this opinion focuses on the second step of the analysis: applying the undisputed facts to the constitutional standard.

 The parties do not dispute that the briefcase was not locked or otherwise secured. As we noted in State v. Matejka, another fact scenario "might give rise to a different focus for the common authority analysis." 241 Wis. 2d 52, ¶ 36.

 For example, in United States v. Welch officers obtained consent from a male suspect to search a rental vehicle he shared with a female suspect but did not obtain consent to search the female suspect's purse. 4 F.3d 761, 762 (9th Cir. 1993). On appeal, the Ninth Circuit concluded that, while the suspect had authority to consent to the search of the car, "there is simply nothing in the record demonstrating that [the male suspect] had use of, let alone joint access to or shared control over, [the defendant's] purse." Id. at 764. By contrast, in the case at issue, Deputy Brockway's belief that the briefcase was at least subject to joint access or shared control is amply supported by the record.

 The driver of the vehicle in State v. Suazo consented to the initial search, but when the non-consenting passenger's bag was removed from the trunk, the passenger clearly stated that it belonged to him and not the driver. 627 A.2d 1074, 1075. Such a clear statement of ownership is lacking in the case at issue. A reasonable person would not understand the statement "Got a warrant for that?" to mean "that belongs to me."

 We are not confronted with whether the officer's search of the tools or knives was inappropriate. Thus, we need not address whether the driver's consent was somehow limited with respect to these items. In addition, we do not conclude that an officer has a duty to put items such as these, which are potential weapons, into the hands of the requester, especially while the officer is conducting a search and such items could be used to harm the officer.

 In fact, this court has declined the opportunity to require law enforcement to inquire further in other settings. See, e.g., State v. Edler, 2013 WI 73, ¶¶ 86-87, 350 Wis. 2d 1, 833 N.W.2d 564 (Ziegler, J., concurring in part, dissenting in part); State v. Jennings, 2002 WI 44, ¶¶ 31-36, 252 Wis. 2d 228, 647 N.W.2d 142 (indicating that while clarifying questions are "good police practice," such questions are not required).