COURT OF APPEALS
DECISION
DATED AND FILED

June 19, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP1707**

Cir. Ct. No. **2022TR4349**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

VILLAGE OF BUTLER,

   PLAINTIFF-RESPONDENT,

V.

BRANDON J. HERNANDEZ,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Waukesha County: LLOYD V. CARTER, Judge. *Affirmed*.

¶1    GROGAN, J.[1]    Brandon J. Hernandez appeals from a judgment entered finding he improperly refused to consent when police asked him to submit

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

to an evidentiary blood test. Hernandez contends he consented and that the circuit court incorrectly determined that his actions and words constituted a refusal. This court affirms.

## I. BACKGROUND

¶2    In June 2022, at about 11:05 p.m., Village of Butler Police Officer Joseph Benson observed a vehicle driving under the speed limit in the middle of two lanes with its flashers on. Benson followed the vehicle and observed it as it proceeded slowly through an intersection and "continued to drive in the middle of the road." Benson thereafter conducted a traffic stop of the vehicle, which Hernandez was driving, and he "[s]melled the odor of intoxicants" and noticed Hernandez's slurred speech. According to Benson, Hernandez handed him a credit card when he asked Hernandez for his ID, and Hernandez also seemed confused about his location. Hernandez initially denied that he had been drinking that evening but subsequently admitted to having done so after having been asked multiple times. Based on his observations and Hernandez's conduct and admission, Benson suspected Hernandez was operating under the influence and conducted field sobriety tests, which Hernandez failed.

¶3    Benson arrested Hernandez and transported him to the police station for processing. There, Benson read Hernandez the "Informing the Accused" Form (the Form) and asked Hernandez if he would consent to an evidentiary test. Hernandez did not respond with either a "yes" or "no" after the first reading and instead asked a number of questions and struggled with deciding how to ultimately respond to the question. Benson read the Form a second time, after which Hernandez again did not answer "yes" or "no" even after being repeatedly instructed to do so. Instead, he asked if he could delay making a decision and talk

to a lawyer because he did not understand the consequences of saying yes or saying no. When pressed for a yes or no answer, Hernandez ultimately responded: "I guess, yes." When told he had to definitively answer yes or no and that "guessing" was not an option, Hernandez waffled again and continued to ask questions. Benson informed Hernandez he was interpreting Hernandez's actions as a refusal, returned to the squad car to fill out the refusal paperwork, and thereafter issued a citation.

¶4  Hernandez requested a refusal hearing in front of the circuit court. At the refusal hearing, the parties stipulated as to the facts leading up to Hernandez's arrest and that there was "probable cause to arrest[.]" They also stipulated as "to all of the issues pertinent for [the refusal] hearing with the exception [of] whether or not there actually was a refusal."

¶5  Benson had been wearing a body camera during the course of his interaction with Hernandez, and the Village played a portion of that body camera footage for the circuit court at the refusal hearing. Benson testified about the body camera footage at the hearing, and the court admitted the DVD containing the footage into evidence. Benson further explained that although Hernandez's failure to respond with either a "yes" or a "no" after the first reading could have been deemed a refusal and that police are not required to read the Form a second time, he decided to read the Form to Hernandez a second time because he wanted to give Hernandez "the benefit of the doubt[.]" Ultimately, Benson interpreted Hernandez's equivocal "I guess, yes" to be a refusal because Hernandez did not answer with a definitive yes and continued asking questions about what would happen depending on whether he answered "yes" or "no," even after responding. Benson testified that because he had asked Hernandez for an explicit "yes or no response" multiple times, Hernandez's reluctant "'yes, I guess' did not seem

certain to [him]." Benson confirmed that after he began filling out the refusal paperwork, Hernandez "kept repeating 'I said yes.'" The recording reflects that even then, Hernandez continued to ask questions about what would happen depending on how he responded and stated that he was confused.

¶6 After hearing Benson's testimony, reviewing the body camera footage, and hearing the parties' arguments, the circuit court determined that Hernandez had refused to consent to an evidentiary test. Specifically, it explained that:

> [I]t's abundantly clear from the record that Officer Benson read from a form, read it verbatim, inquired of Mr. Hernandez whether he would submit to an evidentiary chemical test; and it was clearly interaction back and forth between Mr. Hernandez and Officer Benson about that issue. This went on for several minutes. I didn't time the exact length of time.
>
> Mr. Hernandez responded to the request for a yes or no response with further questions, in the Court's view, either based upon that lack of understanding of what was occurring or an attempt to negotiate some other outcome. This appears to be, in the Court's view from my experience, one of those situations where [the] law enforcement officer attempts to go beyond what is necessarily required of them by the law, which is to read the form and require either a yes or no response. The officer did elect to read the form again after Mr. Hernandez equivocated in his responses and failed to provide a yes or no response.
>
> The failure to provide a distinct yes or no amounts to not being a "yes" and amounts to a refusal. Mr. Hernandez went back and forth a couple of times and the most he ever said that the Court heard was "I guess, yes." "Well, I guess" doesn't mean anything. "Yes" means "yes," "no" means "no;" and it is not required of the officer to wait a reasonable amount of time for a person to understand or comprehend but a reasonable amount of time to answer with a "yes" or "no."
>
> Mr. Hernandez didn't do that. That amounts to a refusal in the Court's eyes. And the Court, under those

circumstances, based on the totality of the evidence that's been presented here today, finds that Mr. Hernandez did refuse a chemical test, that that refusal was not reasonable, and, therefore, grants the Village's request to make that finding that the refusal was not proper.

The court thereafter entered judgment, and Hernandez appeals.

## II. DISCUSSION

¶7     The issue in this case is whether the circuit court correctly determined that Hernandez refused to consent to an evidentiary test. Whether Hernandez consented presents "a question of historical fact." *See State v. Artic*, 2010 WI 83, ¶30, 327 Wis. 2d 392, 786 N.W.2d 430. Appellate courts "uphold a finding of consent in fact if it is not contrary to the great weight and clear preponderance of the evidence." *Id.*; *see also State v. Brar*, 2017 WI 73, ¶13, 376 Wis. 2d 685, 898 N.W.2d 499 ("'We will uphold a circuit court's finding of historic fact unless it is clearly erroneous.'" (citation omitted)). In determining whether "consent was given in fact," a court looks first to an accused's "words, gestures, or conduct; and, second, [to] whether the consent given was voluntary." *Artic*, 327 Wis. 2d 392, ¶30.

¶8     Hernandez argues that the circuit court erred in finding that his actions and words constituted a refusal. He claims, to the contrary, that he "actively consented through his affirmative language and actions." The Village responds that the court's finding was correct and quotes *State v. Neitzel*, 95 Wis. 2d 191, 205, 289 N.W.2d 828 (1980), for the proposition that the law requires an accused "to take the test promptly or to refuse it promptly." Here, the Village says, Hernandez did neither.

¶9 While neither party specifically addresses the Fourth Amendment,[2] it is worth noting that both the Fourth Amendment and Article I, Section 11 of the Wisconsin Constitution[3] "protect '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *State v. Robinson*, 2010 WI 80, ¶24, 327 Wis. 2d 302, 786 N.W.2d 463 (alteration in original; citations omitted). However, "[t]he Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Brar*, 376 Wis. 2d 685, ¶15 (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)). "'[A] search conducted pursuant to consent'" is a "'well-established exception to the warrant requirement[.]'" *Brar*, 376 Wis. 2d 685, ¶16 (citation omitted).

¶10 After hearing testimony at the refusal hearing and viewing the body camera footage, the circuit court found that Hernandez did not consent to Benson's request that he submit to an evidentiary test. In reaching this conclusion, the court based its finding on the totality of the circumstances and the fact that Hernandez did not simply say "yes" but instead, after a substantial exchange with the officer, said, equivocally, "I guess, yes."

¶11 Hernandez asserts that the circuit court erred in reaching this conclusion because, he says, he consented both through Wisconsin's Implied Consent Law, WIS. STAT. § 343.305(2), and then through his words. In regard to implied consent, Hernandez argues that he consented to the search based on his decision to drive on Wisconsin's roads and that his implied consent is consent by

---

[2] U.S. CONST. amend IV.

[3] WIS. CONST. art. I, § 11.

conduct. *See **Brar**,* 376 Wis. 2d 685, ¶¶20-21. Relying on *State v. Wantland*, 2014 WI 58, ¶33, 355 Wis. 2d 135, 848 N.W.2d 810, for the proposition that revocation of consent must be unequivocal, Hernandez therefore argues that because he consented to the search via his conduct (driving on Wisconsin's roads), he could only revoke that consent via an unequivocal action or statement because an ambiguous attempt to revoke consent is insufficient. Thus, he says, his response of "I guess, yes" was an affirmation of his consent—or at the very least, that it was not an *unequivocal* revocation of his previously given implied consent.

¶12 While Hernandez is correct that "consent given by virtue of driving on Wisconsin's roads … is one incarnation of consent by conduct" and that such consent "is no less sufficient" than other forms of consent, in the context of implied consent cases, it nevertheless remains necessary to "consider the totality of the circumstances" in determining whether "an individual's previously-given consent continues to be voluntary[.]" *See **Brar**,* 376 Wis. 2d 685, ¶¶20-21, 25. Whether the consent remained voluntary is based on the totality of the circumstances. *Id.*, ¶25.

¶13 Because the circuit court determined that Hernandez's response was a refusal—in other words, that Hernandez had revoked his consent—this court, in applying these principles, must determine whether, at the time Hernandez responded "I guess, yes," Hernandez was reaffirming his previously given consent or, to the contrary, was revoking that consent "when he was given the statutory opportunity to withdraw consent at the officer's reading of the Informing the Accused form[.]" *See id.*, ¶34.

¶14 Having reviewed the Record, including the body camera footage, this court cannot conclude that the circuit court erroneously exercised its

discretion in concluding, based on the totality of the circumstances, that Hernandez revoked his consent (i.e., refused).

¶15 As ***Brar*** has made clear, a driver who "avail[s] himself of the roads of Wisconsin … [has] consented through his conduct to a blood draw[,]" and "[a]ny analysis of a driver's consent under Wisconsin's implied consent law must begin with this presumption." ***Id.***, ¶29. This is only the starting point, however, as WIS. STAT. § 343.305(4) requires that an officer, upon requesting that an individual submit to an evidentiary test, read the Form to the accused. *See **State v. Prado***, 2021 WI 64, ¶¶22-23, 397 Wis. 2d 719, 960 N.W.2d 869. The Form, in turn, "sets forth the consequences of refusing the test, which include revocation of operating privileges, and the consequences of consenting to the test, i.e. that the results can be used against the suspect in court." ***Id.***, ¶23. The implied consent statute thus "gives those who are capable of responding a choice: submit to the test and risk that the results are presented in court, or refuse the test and face license revocation and other civil penalties." ***Id.*** Consequently, even in the context of the implied consent law—where ***Brar*** has established that consent by conduct has already been given—a driver such as Hernandez must either reaffirm the previously given consent or revoke that consent by refusing to submit to the officer's request. And, as is clear, "consent for purposes of a Fourth Amendment search must be 'unequivocal and specific.'" ***Prado***, 397 Wis. 2d 719, ¶46 (quoting ***State v. Reed***, 2018 WI 109, ¶8, 384 Wis. 2d 469, 920 N.W.2d 56).

¶16 Here, Hernandez's actions and words upon being read the Form demonstrated reluctance to reaffirm the previously given consent and did not convey that he remained willing to voluntarily submit to a bodily intrusion for the purpose of testing his blood alcohol concentration. Neither the Fourth Amendment nor the implied consent law allows for such equivocation; rather, an

accused must "take the test promptly or … refuse it promptly." *See Neitzel*, 95 Wis. 2d at 205; *see also **Prado***, 397 Wis. 2d 719, ¶46 (consent must be *unequivocal and specific*). That did not happen here. To the contrary, each and every time Benson asked for an affirmative response, Hernandez failed to provide one, and although Hernandez ultimately provided an *equivocal*—as demonstrated by his demeanor—yes when he responded "I guess, yes," his actions before and after the equivocal yes indicated that he was not voluntarily consenting to submit to a blood draw. Specifically, Hernandez repeatedly expressed confusion as to whether he should say yes or no after Benson read the Form multiple times, and he clearly struggled to make a decision as to whether or not to consent. Ultimately, it is clear that Hernandez did not want to submit to the blood test, and he sufficiently communicated that to the officer.

¶17 To the extent Hernandez suggests he was confused about the Form, confusion over the Form is not a defense in a refusal case. *See **County of Ozaukee v. Quelle***, 198 Wis. 2d 269, 280, 542 N.W.2d 196 (Ct. App. 1995), *abrogated on other grounds by **Washburn County v. Smith***, 2008 WI 23, ¶56, 308 Wis. 2d 65, 746 N.W.2d 243. Consequently, without a definitive "yes," Hernandez's actions, given the totality of the circumstances here, may only be interpreted as a refusal.[4]

---

[4] In reaching this conclusion, this court necessarily rejects Hernandez's argument that the circuit court improperly relied upon *State v. Rydeski*, 214 Wis. 2d 101, 571 N.W.2d 417 (Ct. App. 1997), in finding that Hernandez had revoked his consent (refused). While Hernandez is correct that the facts in his case differ from those at issue in *Rydeski*, the reality is that the facts in such cases are *always* different. Nevertheless, the legal principles still apply. Here, neither Hernandez's professed confusion nor his attempt to consent after Benson began filling out the refusal paperwork alters the outcome in this matter.

¶18    Based on the foregoing, this court agrees with the circuit court's analysis. Under the totality of the circumstances, it was reasonable for the circuit court to conclude that Hernandez's conduct and words did not constitute voluntary consent. Therefore, the circuit court's finding that Hernandez refused the request to submit to an evidentiary test was not clearly erroneous.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.