# COURT OF APPEALS
## DECISION
## DATED AND FILED

## January 27, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP644-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF189

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

DONALD HENRY BAUER,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Dunn County: JAMES M. PETERSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Donald Bauer appeals from a judgment convicting him, upon his no-contest plea, of a ninth offense operating a motor vehicle with a

detectable amount of a restricted controlled substance in his blood. Bauer contends, based upon several theories, that evidence seized from his vehicle and his person during and after a traffic stop should have been suppressed. We conclude that the search of Bauer's vehicle was valid based upon his consent and that this conclusion is dispositive of the other issues Bauer raises on appeal. Accordingly, we affirm.

## BACKGROUND

¶2 The circuit court found the facts of the case to be as testified to by Dunn County Deputy Sheriff Emmer Shields and as shown on dashboard camera video from Shields' squad car. The parties do not contest the court's findings of fact.

¶3 Shields stopped Bauer's vehicle for speeding and identified Bauer as the operator of the vehicle. Shields had stopped Bauer about two months earlier when there was a warrant for his arrest, and Shields also knew that Bauer's vehicle had been observed at several residences known for drug activity. Shields formed the impression that Bauer was nervous because he was making fast shaky movements and exhibited elevated breathing, which Shields perceived as signs of an elevated heart rate.

¶4 When Shields asked Bauer why he had been speeding, Bauer responded that he was experiencing chest pains and was heading to the hospital. Shields asked Bauer whether he wanted an ambulance, and Bauer initially said no.

¶5 Shields returned to his squad car and ran Bauer's information through his computer system and dispatch. When Shields returned to Bauer's vehicle, he observed a coffee-type cup shoved between Bauer's driver's seat and

the center console with a rag hanging from it. Bauer moved his leg to obscure Shields' view of the cup, and he made several additional attempts to move the cup and rag throughout the ensuing conversation.

¶6    After seeing the cup, Shields initiated the following exchange.

SHIELDS:    Nothing in the car?

BAUER:    Nope.

SHIELDS:    Do you have a problem if I looked?

BAUER:    [Unintelligible]

SHIELDS:    What's that?

BAUER:    I don't know. No.

SHIELDS:    You don't have a problem if I take a look inside, just make sure there wasn't anything in there?

BAUER:    Well, I know there ain't nothing in here.

SHIELDS:    Well, that's why I'm asking if I can take a look.

BAUER:    Sure.

SHIELDS:    What's that?

BAUER:    I suppose you could.

¶7    Shields asked whether Bauer had taken any medications that day, and Bauer responded that he had taken Vicodin, for which he showed a valid prescription. Bauer denied having taken any stimulants that would explain his nervousness, and his pupils appeared normal.

¶8    Shields asked Bauer again whether he wanted an ambulance, and he suggested that Bauer call the hospital for advice. While Bauer was on hold on his phone, Shields asked Bauer to step out of his vehicle so that Shields could check

it. When Bauer did not move, Shields repeated the request, and Bauer stated, "I don't know, wait," before beginning to speak with hospital staff. Based upon a conversation Bauer had with an intake nurse, Shields ultimately called an ambulance for Bauer.

¶9 Once the ambulance arrived, Bauer exited his vehicle. Bauer attempted to close the door to his vehicle, but Shields held it open. Through the open car door, Shields was able to see a small glass vial, which he identified as the bottom of a methamphetamine bong or pipe on the floor of the car. Shields then pulled out the rag that had been in the cup and discovered the upper section of a methamphetamine pipe.

¶10 Shields proceeded to have a conversation with Bauer in the back of the ambulance, in which Bauer admitted to having used methamphetamine the prior evening. Shields noticed Bauer looking at a bulge in Bauer's pocket when Shields asked Bauer if he had any weapons on him. Shields then patted Bauer down and asked him what the bulge was. Bauer removed an earbud case from his pocket and handed it to Shields. Shields opened the earbud case and found a small plastic baggie containing methamphetamine.

¶11 Shields stayed at the scene of the traffic stop to retrieve the two components of the methamphetamine pipe and conduct a further search of Bauer's vehicle, while another law enforcement officer arrived and followed the ambulance to the hospital. Shields subsequently went to the hospital as well,

where he read Bauer his *Miranda* rights,[1] and Bauer agreed to additional questioning.

¶12    Bauer told Shields he had used methamphetamine the evening before the traffic stop.  Shields asked Bauer to perform some "modified" field sobriety tests while Bauer was lying in a hospital bed, hooked up to a heart monitor.  Shields then read Bauer the "Informing the Accused" form, and Bauer submitted to a blood draw.

¶13    The State charged Bauer with a ninth offense of operating a motor vehicle with a restricted controlled substance, and Bauer filed a suppression motion challenging the search of his car, the frisk of his person, and the blood draw.  After the circuit court denied the suppression motion, Bauer entered a negotiated plea and filed this appeal.[2]

### DISCUSSION

¶14    On appeal, Bauer contends that the evidence seized from his car, his person, and his blood should be suppressed because: (1) Bauer did not voluntarily consent to the search of his car; (2) any consent given was withdrawn; (3) there was no basis to extend the length of the traffic stop to when Bauer was in the ambulance; (4) there was no reasonable suspicion that Bauer was armed to justify frisking Bauer in the ambulance or opening the earbud case; and (5) absent the

---

[1] *See **Miranda v. Arizona**, 384 U.S. 436 (1966).

[2] By statute, we may review a suppression ruling notwithstanding a subsequent plea of guilty or no contest.  WIS. STAT. § 971.31(1) (2023-24).

All references to the Wisconsin Statutes are to the 2023-24 version.

illegally obtained evidence from the traffic stop, there were no grounds for the blood draw at the hospital.

¶15 When reviewing a motion to suppress evidence, we will defer to the circuit court's credibility determinations and will uphold its findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2); *State v. Wantland*, 2014 WI 58, ¶19, 355 Wis. 2d 135, 848 N.W.2d 810. We will independently determine, however, whether a particular set of facts violates constitutional principles. *Wantland*, 355 Wis. 2d 135, ¶19.

¶16 The Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution protect the right to be free from unreasonable searches. *State v. Dearborn*, 2010 WI 84, ¶14, 327 Wis. 2d 252, 786 N.W.2d 97. A warrantless search is per se unreasonable unless it falls within a clearly delineated exception to the warrant requirement. *State v. Artic*, 2010 WI 83, ¶29, 327 Wis. 2d 392, 786 N.W.2d 430.

¶17 One of the most well established of these exceptions is consent. *State v. Phillips*, 218 Wis. 2d 180, 196, 577 N.W.2d 794 (1998). Two conditions must be met before consent may operate as a valid exception to the warrant requirement. First, the consent must have been "freely and voluntarily given." *Wantland*, 355 Wis. 2d 135, ¶23 (citation omitted). Second, the consent must have been "given by an individual having either actual or apparent authority over the place to be searched." *Id.*

¶18 There is no dispute here that Bauer had the authority to consent to a search of his vehicle. The question before us is whether he did so voluntarily.

¶19     A response is generally considered voluntary if it was "given in the absence of duress or coercion, either express or implied." *State v. Floyd*, 2017 WI 78, ¶30, 377 Wis. 2d 394, 898 N.W.2d 560 (citation omitted). In determining whether consent was voluntarily given under the totality of the circumstances, a court may consider such factors as:

> whether any misrepresentation, deception or trickery was used to persuade the defendant to consent; whether the defendant was threatened or physically intimidated; the conditions at the time the search was made; the defendant's response to the officer's request; the defendant's physical and emotional condition and prior experience with police; and whether the officers informed the individual that consent could be withheld.

*Id.* (citation omitted).

¶20     We conclude that the totality of the circumstances here demonstrate that Bauer gave voluntary consent to Shields' search of his vehicle. Bauer was being detained in his own vehicle in daylight along a public highway where passersby could see him, not isolated in a police station. Shields was the only officer present at the time, and he did not draw his gun or use any deception, threats or force to compel Bauer to give his consent.

¶21     Bauer contends that his responses to Shields' requests for consent were equivocal or ambiguous. We disagree. Bauer first told Shields that he did not have a problem if Shields looked in his car, and he then confirmed "sure," that he "suppose[d]" Shields could look in his car. Taken together, these responses plainly provided consent.

¶22     Bauer also contends that his health situation made him more vulnerable to coercion. As the circuit court noted, however, Bauer was healthy

enough to have been driving his vehicle, and the video showed that Bauer was providing appropriate responses to questions.

¶23 Next, it is true that Shields did not inform Bauer that he had the right to deny consent. That omission was not fatal in **Floyd**, however, and we are not persuaded that it is fatal here. *See Floyd*, 377 Wis. 2d 394, ¶33. We note that Shields' prior contact with Bauer showed that Bauer already had at least some familiarity with police procedures. In any event, the totality of the circumstances show that Bauer was not coerced to provide consent, and we conclude that Bauer provided voluntary consent to search his vehicle.

¶24 Bauer also contends that he withdrew consent by responding, "I don't know, wait," when Shields asked him to step out of his vehicle and by attempting to close his car door when he exited his vehicle. Again, we disagree.

¶25 The test for whether a person has withdrawn consent to search is an objectively reasonable one—that is, would a reasonable person, considering the totality of the circumstances, have understood the defendant to have unequivocally withdrawn consent. **Wantland**, 355 Wis. 2d 135, ¶33. In context, a reasonable person could interpret Bauer's request—that Shields "wait" before having him exit the vehicle so Shields could search it—as a request to delay the search while Bauer spoke with hospital personnel. A reasonable person could view closing a car door after exiting a vehicle as a simple reflexive act. Neither action unequivocally expresses a withdrawal of consent.

¶26 All of Bauer's remaining arguments are premised upon the search of his vehicle having been conducted without consent. Bauer does not dispute that the discovery of the methamphetamine pipe pieces in Bauer's vehicle provided grounds to extend the stop, arrest Bauer, and search him incident to arrest, and that

Bauer's additional admissions in the ambulance provided grounds for the blood draw. We therefore conclude that the circuit court properly denied the suppression motion.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.