# COURT OF APPEALS
## DECISION
## DATED AND FILED

## August 5, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos. 2021AP454**
**2021AP455**

Cir. Ct. Nos. 2019TR406
2019TR597

## STATE OF WISCONSIN

## IN COURT OF APPEALS
## DISTRICT IV

---

PORTAGE COUNTY,

    PLAINTIFF-RESPONDENT,

  V.

SEAN MICHAEL DUGAN,

    DEFENDANT-APPELLANT.

---

APPEALS from a judgment of the circuit court for Portage County: ROBERT J. SHANNON, Judge. *Affirmed and cause remanded for further proceedings.*

¶1      FITZPATRICK, J.[1] Sean Dugan was stopped by an officer on suspicion of operating a motor vehicle while intoxicated.  There was inclement weather at the time of the stop, and the officer directed Dugan to perform field sobriety tests on the side of the road.  After those tests, the officer placed Dugan under arrest, transported him to a hospital to have his blood drawn, and the draw established that Dugan's blood had .268g/100mL ethanol.  As a result, Dugan was charged with operating a vehicle while intoxicated in the Portage County Circuit Court.  Dugan moved to suppress the results of the blood draw on the ground that his detention and arrest violated the Fourth Amendment because the officer did not transport Dugan to a location sheltered from the weather to perform the field sobriety tests.  Dugan also argued that the officer lacked probable cause to arrest.  The circuit court denied Dugan's suppression motion, and later found Dugan guilty after a court trial.  Dugan appeals the judgment.  I affirm.

**BACKGROUND**

¶2      For purposes of this appeal, there is no dispute as to the following facts adduced at the suppression hearing.

¶3      Dugan was driving his vehicle in the City of Stevens Point, Portage County, in the early hours of the morning.  Deputy Smallwood of the Portage County Sheriff's Office stopped Dugan's vehicle after observing the vehicle strike a snowbank and then drive the wrong way on a one-way street.  Smallwood made contact with Dugan and observed that Dugan:  was having trouble keeping a train of thought; emitted a strong odor of intoxicants; had glossy eyes; and admitted to

---

[1] These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

having three or four drinks earlier in the evening. Based on these observations, Smallwood asked Dugan to step out of his vehicle to conduct field sobriety testing.

¶4    At that time, it had been snowing for several hours and was still snowing at a "light to moderate" rate. Smallwood had Dugan stand in an impression in the snow created by his squad car tires and directed Dugan to perform three field sobriety tests: a "walk-and-turn" test, a "one-leg stand" test, and a "horizontal gaze nystagmus" test (HGN).[2] Smallwood observed "clues" indicating intoxication while Dugan performed each of these tests: six clues on the walk-and-turn test; four clues on the one-leg stand; and six out of six clues on the HGN test. Smallwood testified that, while some of the clues exhibited by Dugan for two of the tests could "potentially" be related to the weather (but he could not be sure), the clues for the HGN test exhibited by Dugan could not be related to the weather.

¶5    Smallwood placed Dugan under arrest based on Smallwood's initial observations and Dugan's performance on the entirety of the field sobriety tests. Smallwood transported Dugan to a nearby hospital, where Dugan consented to a chemical test of his blood. As noted, the blood test indicated that Dugan had a blood alcohol concentration of .268.

¶6    Dugan was charged with operating a motor vehicle while under the influence of an intoxicant, as a first offense contrary to WIS. STAT. § 346.63(l)(a),

---

[2] A horizontal gaze nystagmus test requires a subject to stand with his or her feet together and arms down and follow the tip of a pen with his or her eyes as the officer moves the pen from one side to the other. The specially trained officer watches for six "clues" of intoxication, relating to a particular kind of jerkiness in the eyes. *County of Jefferson v. Renz*, 231 Wis. 2d 293, 298, 603 N.W.2d 541 (1999).

and operating a motor vehicle with a prohibited alcohol concentration, as a first offense contrary to § 346.63(1)(b). He moved to suppress the results of the blood test on the ground that Smallwood's decision to conduct field sobriety tests in the inclement weather was unreasonable under the Fourth Amendment. Dugan also argued that the inclement weather undermined Smallwood's decision regarding probable cause to arrest because, according to Dugan, Smallwood could not have determined if Dugan's performance during the field tests was caused by intoxication or the poor conditions.

¶7 The circuit court denied Dugan's motion to suppress and, after a court trial, entered a judgment for first offense operating a motor vehicle with a prohibited blood alcohol concentration. The other charge was dismissed. The circuit court stayed the imposition of Dugan's sentence during the pendency of this appeal.

## DISCUSSION

¶8 Dugan makes two arguments on appeal. First, he argues that a reasonableness standard in the Fourth Amendment required Deputy Smallwood to "remove [Dugan] to a location sheltered from the inclement weather conditions for the purpose of fairly administering field sobriety tests to [Dugan]." Second, Dugan contends that Deputy Smallwood's probable cause determination fails based on the inclement weather conditions present during Dugan's field sobriety testing. Each argument is addressed in turn.

## I. Relocation of Field Sobriety Testing.

¶9 I begin by setting forth the standard of review and governing principles regarding temporary investigative stops.

4

**A. Standard of Review and Governing Principles.**

¶10   Whether evidence must be suppressed is a constitutional question. *State v. VanBeek*, 2021 WI 51, ¶22, 397 Wis. 2d 311, 960 N.W.2d 32 (citing *State v. Coffee*, 2020 WI 53, ¶19, 391 Wis. 2d 831, 943 N.W.2d 845).  This court employs a "two-step inquiry" to make that determination.  *Id.*  First, this court will uphold a circuit court's findings of historic fact unless those findings are clearly erroneous.  *Id.*  Second, this court independently and objectively examines the facts known to the officer at the time of the alleged seizure, applying constitutional principles to those facts.  *Id.*

¶11   The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  *State v. Brar*, 2017 WI 73, ¶15, 376 Wis. 2d 685, 898 N.W.2d 499 (quoting *State v. Tullberg*, 2014 WI 134, ¶29, 359 Wis. 2d 421, 857 N.W.2d 120).  "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable."  *Id.* (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)).  Courts have "repeatedly eschewed bright-line rules for identifying whether a seizure is reasonable" and instead have "focused on the totality of the circumstances that relate to each seizure."  *State v. Arias*, 2008 WI 84, ¶34, 311 Wis. 2d 358, 752 N.W.2d 748 (citing *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)).

¶12   A law enforcement officer may detain a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.  *Terry v. Ohio*, 392 U.S. 1, 22 (1968); *see also State v. Floyd*, 2017 WI 78, ¶21, 377 Wis. 2d 394, 898 N.W.2d 560 (holding that a routine traffic

stop is analogous to a ***Terry*** stop). The standard for ***Terry*** stops is codified in WIS. STAT. § 968.24 which states:

> After having identified himself or herself as a law enforcement officer, a law enforcement officer may stop a person in a public place for a reasonable period of time when the officer reasonably suspects that such person is committing, is about to commit or has committed a crime, and may demand the name and address of the person and an explanation of the person's conduct. *Such detention and temporary questioning shall be conducted in the vicinity where the person was stopped.*

Sec. 968.24 (emphasis added). The final sentence of this statute authorizes the police to move a suspect a short distance during the course of a ***Terry*** stop. ***State v. Quartana***, 213 Wis. 2d 440, 446, 570 N.W.2d 618 (Ct. App. 1997).

¶13 I now address Dugan's arguments, beginning with his contention that Smallwood's detention of him was an unreasonable seizure under the Fourth Amendment.

## B. Dugan Fails to Establish That His Detention Was an Unreasonable Seizure.

¶14 Dugan contends that the Fourth Amendment's "reasonableness" requirement imposed a duty on Smallwood in these circumstances to transport Dugan to a more sheltered location. The County responds that officers may move an individual to a more convenient location within certain limits, as noted in WIS. STAT. § 968.24 as quoted above, but are under no constitutional obligation to do so. For the following reasons, I reject Dugan's argument that Smallwood's decision as to the place to conduct the field sobriety testing violated the Fourth Amendment.

¶15    The parties agree that no statute or other authority requires officers to relocate suspects to more a sheltered location for field sobriety testing. This court recognized in *Quartana* that WIS. STAT. § 968.24 allows officers to transport suspects a short distance. *Quartana*, 213 Wis. 2d at 446. However, as Dugan concedes, officers are not required to do so.

¶16    Additionally, Dugan does not attempt to tether his arguments to any particular standard of reasonableness under the Fourth Amendment. When courts consider the reasonableness of a temporary detention, the court may consider "whether [the stop] lasted 'no longer than is necessary to effectuate the purpose of the stop'" and "whether the investigative means used in the continued seizure are 'the least intrusive means reasonably available to verify or dispel the officer's suspicion.'" *Arias*, 311 Wis. 2d at 379 (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). Courts also may consider "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *State v. Blatterman*, 2015 WI 46, ¶21, 362 Wis. 2d 138, 864 N.W.2d 26 (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)). Dugan's arguments about the reasonableness of his detention do not address any Fourth Amendment standards.

¶17    Moreover, there is no evidence in the record, and accordingly no finding by the circuit court, that the weather conditions actually made a difference that matters to the clues Dugan exhibited during the roadside field sobriety tests. Dugan points to no authority holding that the mere potential that weather conditions might affect the results of a field sobriety test renders the officer's decision to conduct that test in a given location a violation of the Fourth Amendment. I will not develop Dugan's arguments for him. *State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992). As a result, I conclude

Dugan has failed to make a viable argument that Smallwood's investigation violated the Fourth Amendment.[3]

¶18     I next address Dugan's argument regarding probable cause.

## II.  Probable Cause.

¶19     Dugan also argues that Smallwood lacked probable cause to arrest because, according to Dugan, Smallwood could not determine whether Dugan's performance on the field sobriety testing was caused by the weather or intoxication.  The circuit court concluded that Smallwood had probable cause to arrest for operating a vehicle while intoxicated based on his observations of Dugan unrelated to the field sobriety testing—such as Dugan striking a snow bank, the smell of intoxicants, and Dugan's admission to drinking and driving—as well as evidence from the field sobriety tests that could not possibly be affected by weather—such as the HGN test.  I agree with the circuit court that there is a sufficient basis to conclude there was probable cause to arrest.

## CONCLUSION

¶20     For the foregoing reasons, the judgment of the circuit court is affirmed and this matter is remanded for imposition of the sentence.

    *By the Court.*—Judgment affirmed and cause remanded for further proceedings.

---

[3] Dugan also argues that the field sobriety testing was unreasonable because the National Highway Transportation Safety Administration's ("NHTSA") training manual recommends conducting these tests elsewhere when weather conditions may interfere with the subject's performance.  I reject that argument as undeveloped.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.