¶ 1.
PATIENCE DRAKE ROGGENSACK, C.J.
We review an unpublished decision of the court of appeals[1] affirming the conviction of Navdeep Brar (Brar) for operating while intoxicated, third offense in *692 violation of Wis. Stat. § 346.63(l)(b) (2013-14)[2] and an order of the circuit court denying Brar's motion to suppress the results of a blood test.[3]
¶ 2. Brar moved to suppress the results of a blood test on the grounds that it was an unconstitutional search. Specifically, he argued that he did not consent to having his blood drawn, and therefore, the officer was required to obtain a warrant. The circuit court denied Brar's motion and found that Brar had consented. On appeal, Brar argues that, even if he had consented, his consent was not given voluntarily.
¶ 3. We conclude that the circuit court's finding that Brar consented to the blood draw was not clearly erroneous. Additionally, we conclude that Brar's consent was voluntary. Accordingly, we affirm the decision of the court of appeals.
I. BACKGROUND
¶ 4. A City of Middleton police officer stopped Brar for driving over the speed limit. During the stop, the officer conducted field sobriety tests, which Brar failed. Brar then submitted to a preliminary breath test and blew a .19. As a result, Brar was arrested.[4]
¶ 5. After arresting Brar, the officer transported him to the police department, where the officer read Brar the "informing the accused form." While being read the form, Brar repeatedly interrupted the officer with questions or comments related to the form. As *693 part of "informing the accused" process, the officer asked Brar to submit to a chemical evidentiary test. The precise words Brar said in response are disputed. However, the officer thought Brar provided an affirmative response, and therefore believed that Brar agreed to submit to a blood draw.
¶ 6. After agreeing to submit to an evidentiary test, Brar asked several questions. One of these questions was what kind of test would be conducted, and the officer responded he would conduct a blood draw. Brar then asked the officer if he needed a warrant to conduct a blood draw. In response to this question, the officer shook his head as if to respond no, indicating that he did not need a warrant.
¶ 7. Brar was taken to a hospital where his blood was drawn. The test results showed that Brar's blood alcohol content was .186, well above the legal limit to operate a vehicle. Brar was charged with operating while intoxicated, third offense in violation of Wis. Stat. § 346.63(l)(a) and operating a motor vehicle with a prohibited alcohol concentration in violation of § 346.63(l)(b).
f 8. Brar moved to suppress the results of the blood test. The circuit court held a hearing to determine whether Brar had consented to the blood draw.
¶ 9. At the hearing, the officer testified that Brar responded "of course" in response to the question "Will you submit to an evidentiary chemical test of your blood?" According to the officer, Brar then gave "a statement similar to he didn't want to have his license revocated." As a result, the officer believed that Brar had consented to the blood draw. Moreover, the officer testified that Brar did not resist or hesitate to give blood once he was transported to the hospital.
*694 ¶ 10. The circuit court found that Brar had consented to a blood draw. The circuit court relied on the testimony of the officer, which the court found credible. And, the circuit court stated that nothing in the audiovisual recording was inconsistent with the officer's testimony; specifically, that the circuit court heard Brar say "of course," which corroborated the officer's testimony. For these reasons, the circuit court denied Brar's motion to suppress.[5] After the circuit court denied the motion, Brar entered a no contest plea to operating while intoxicated, third offense in violation of Wis. Stat. § 346.63(l)(a).
I 11. The court of appeals affirmed the circuit court's denial of Brar's motion to suppress. First, the court determined that the circuit court's finding that Brar consented to have his blood drawn was not clearly erroneous. Next, the court concluded that Brar's consent was voluntary. The court reasoned that the officer was correct in shaking his head no to indicate he did not need a warrant because Brar had already consented.
¶ 12. This court granted Brar's petition for review, and we affirm the court of appeals.
II. DISCUSSION
A. Standard of Review
f 13. "Whether a defendant has consented to a search is initially a question of historic fact." State v. *695 Johnson, 2007 WI 32, ¶ 56, 299 Wis. 2d 675, 729 N.W.2d 182 (Roggensack, J., dissenting) (citation omitted). "We will uphold a circuit court's finding of historic fact unless it is clearly erroneous." Id. (citing State v. Sykes, 2005 WI 48, ¶ 12, 279 Wis. 2d 742, 695 N.W.2d 277). Next, we "independently apply the constitutional principles to the facts as found to determine whether the standard of voluntariness has been met." State v. Phillips, 218 Wis. 2d 180, 195, 577 N.W.2d 794 (1998).
f 14. In the present case, we apply this two-step test to determine if Brar voluntarily consented to a blood draw.
B. Fourth Amendment, General Principles
f 15. "The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect ' [ [t] he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' "[6] State v. Tullberg, 2014 WI 134, ¶ 29, 359 Wis. 2d 421, 857 N.W.2d 120 (quoting State v. Robinson, 2010 WI 80, ¶ 24, 327 Wis. 2d 302, 786 N.W.2d 463). "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." Florida v. Jimeno, 500 U.S. 248, 251 (1991) (citing Illinois v. Rodriguez, 497 U.S. 177 (1990)).
f 16. "A warrantless search is presumptively unreasonable." Tullberg, 359 Wis. 2d 421, ¶ 30 (quoting *696 State v. Henderson, 2001 WI 97, ¶ 19, 245 Wis. 2d 345, 629 N.W.2d 613). "But there are certain 'specifically established and well-delineated' exceptions to the Fourth Amendment's warrant requirement."[7] State v. Williams, 2002 WI 94, ¶ 18, 255 Wis. 2d 1, 646 N.W.2d 834 (citing Katz v. United States, 389 U.S. 347, 357 (1967)). "One well-established exception to the warrant requirement of the Fourth Amendment is a search conducted pursuant to consent." Phillips, 218 Wis. 2d at 196. And, "it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." Jimeno, 500 U.S. at 250-51 (citing Schneckloth v. Bustamonte, 412 U.S. 281, 219 (1973).
¶ 17. It is well-established that consent "may be in the form of words, gesture, or conduct." Phillips, 218 Wis. 2d 180, ¶ 24; see also State v. Tomlinson, 2002 WI 91, ¶ 37, 254 Wis. 2d 502, 648 N.W.2d 367; United States v. Hylton, 349 F.3d 781, 786 (4th Cir. 2003) ("Consent may be inferred from actions as well as words."). Through conduct, an individual may impliedly consent to be searched. United States v. Lakoskey, 462 F.3d 965, 973 (8th Cir. 2006), as amended on reh'g (Oct. 31, 2006) ("Voluntary consent may be. . . implied."); United States v. Wilson, 914 F. Supp. 2d 550, 558 (S.D.N.Y. 2012) ("Consent may be granted either explicitly or implicitly." (citation omitted)); see also Morgan v. United States, 323 F.3d 776, 781 (9th Cir. 2003) (reasoning, "a warrantless search of a person seeking to enter a military base may be deemed reasonable based on the implied consent of the person searched"); State v. Hanson, 34 P.3d 1, 5 (Haw. 2001), *697 as amended (Nov. 7, 2001) ("[E]ven in the absence of an express indication, implied consent to an airport security search may be imputed from posted notices.").
f 18. Consistent with these principles, "consent to a search need not be express but may be fairly inferred from context." Birchfield v. North Dakota, 136 S. Ct. 2160, 2185 (2016). Therefore, "a search may be lawful even if the person giving consent does not recite the talismanic phrase: 'You have my permission to search.1" United States v. Buettner-Janusch, 646 F.2d 759, 764 (2d Cir. 1981).
f 19. Prior cases from the court of appeals could be read as casting doubt on the maxim that a person may consent through conduct or by implication. For example, the court of appeals in Padley reasoned that consent that arises under Wisconsin's implied consent law is different from consent that is sufficient in and of itself under the Fourth Amendment. State v. Padley, 2014 WI App 65, ¶ 25, 354 Wis. 2d 545, 849 N.W.2d 867. Specifically, the court reasoned that "actual consent to a blood draw is not 'implied consent,' but rather a possible result of requiring the driver to choose whether to consent under the implied consent law." Id. This reasoning implies a distinction between implied consent and consent that is sufficient under the Fourth Amendment. Such a distinction is incorrect as a matter of law.[8]
*698 ¶ 20. Stated more fully, and contrary to the court of appeals' reasoning in Padley, consent can manifest itself in a number of ways, including through conduct. Cf. Florida v. Jardines, 133 S. Ct. 1409, 1415-16 (2013); Marshall v. Barlow's, Inc., 436 U.S. 307, 313 (1978). The use of the word "implied" in the idiom "implied consent" is merely descriptive of the way in which an individual gives consent. It is no less sufficient consent than consent given by other means.
¶ 21. An individual's consent given by virtue of driving on Wisconsin's roads, often referred to as implied consent, is one incarnation of consent by conduct. Wis. Stat. § 343.305(2) (An individual who "drives or operates a motor vehicle upon the public highways of this state ... is deemed to have given consent to one or more tests of his or her breath, blood or urine."). "By reason of the implied consent law, a driver . . . consents to submit to the prescribed chemical tests."[9] State v. Neitzel, 95 Wis. 2d 191, 193, 289 N.W.2d 828 (1980); see also State v. Reitter, 227 Wis. 2d *699 213, 225, 595 N.W.2d 646 (1999) ("The implied consent law provides that Wisconsin drivers are deemed to have given implied consent to chemical testing as a condition of receiving the operating privilege."). And, as a plurality of the Supreme Court explained in Missouri v. McNeely, 133 S. Ct. 1552, 1566 (2013), "all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense." The "consent" to which this court in Neitzel and the Supreme Court in McNeely refer is consent sufficient under the Fourth Amendment — not some amorphous, lesser form of consent. See, e.g., People v. Hyde, 393 P.3d 962, 968 (Colo. 2017) ("Hyde's statutory consent also satisfied the consent exception to the Fourth Amendment warrant requirement. This conclusion flows from recent Supreme Court precedent.").
¶ 22. Furthermore, the Supreme Court's assertion that an individual's consent to a search under the Fourth Amendment "may be fairly inferred from context" was given with specific reference to an implied consent law. Birchfield, 136 S. Ct. at 2185 (reasoning, "consent to a search need not be express but may be fairly inferred from context. . . . Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply."). Of course, the "context" to which the Supreme Court was referring was an individual driving on the roads of a state that had enacted an implied consent law.
*700 ¶ 23. Therefore, lest there be any doubt, consent by conduct or implication is constitutionally sufficient consent under the Fourth Amendment.[10] We reject the notion that implied consent is a lesser form of consent. Implied consent is not a second-tier form of consent; it is well-established that consent under the Fourth Amendment can be implied through an individual's conduct.[11]
¶ 24. When we are asked to affirm a finding that consent was given, whether express or implied, we also must determine whether the consent was voluntary. See generally United States v. Griffin, 530 F.2d 739, 743 (7th Cir. 1976) ("Once the existence of a consent by conduct is determined, its voluntariness must be examined."). Only voluntarily given consent will pass constitutional muster. Schneckloth, 412 U.S. at 222. "Consent is not voluntary if the state proves 'no more than acquiescence to a claim of lawful authority,' " State v. Artie, 2010 WI 83, ¶ 32, 327 Wis. 2d 392, 786 N.W.2d 430 (quoting Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968)), or if the consent was the product of duress or coercion by law enforcement. Schneckloth, 412 U.S. at 227.
*701 ¶ 25. There is no single fact, the absence or presence of which, determines whether consent was voluntarily given. Id. at 226. Rather, in order to determine whether consent was voluntarily given, the totality of the circumstances of each individual case must be examined. Id. at 233. In examining the totality of the circumstances, "we look at the circumstances surrounding the consent and the characteristics of the defendant."[12] Artic, 327 Wis. 2d 392, ¶ 33 (citing Phillips, 218 Wis. 2d at 197-98). Even in implied consent cases, we consider the totality of the circumstances at the time of the blood draw to determine if an individual's previously-given consent continues to be voluntary at that time.
¶ 26. The State has the burden of proving that the consent was freely and voluntarily given. Schneckloth, 412 U.S. at 222. However, the State need not demonstrate that consent was given knowingly or intelligently. See id. at 241 ("Nothing, either in the *702 purposes behind requiring a 'knowing' and 'intelligent' waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures."); see also id. at 235 ("Our cases do not reflect an uncritical demand for a knowing and intelligent waiver in every situation where a person has failed to invoke a constitutional protection.").
¶ 27. Contrary to Supreme Court precedent, decisions from the court of appeals have required the State to prove consent was given knowingly and intelligently. See, e.g., Padley, 354 Wis. 2d 545, ¶ 64 (reasoning there must be "clear and positive evidence the search was the result of a free, intelligent, unequivocal and specific consent" (internal quotations omitted)); State v. Giebel, 2006 WI App 239, ¶ 12, 297 Wis. 2d 446, 724 N.W.2d 402; see also Neitzel, 95 Wis. 2d at 201. The Supreme Court in Schneckloth rejected precisely this requirement. As we interpret our constitution consistent with the Fourth Amendment, we withdraw any language from these cases that requires that consent to a search be given knowingly or intelligently.
C. Application to Brar
¶ 28. In the present case, we must determine whether Brar consented, and if he did, whether his consent was voluntary.
f 29. First, Brar consented under Wisconsin's implied consent law. He availed himself of the roads of Wisconsin, and as a result, he consented through his conduct to a blood draw. Wisconsin Stat. § 343.305(2) (an individual who "drives or operates a motor vehicle *703 upon the public highways of this state ... is deemed to have given consent to one or more tests of his or her breath, blood or urine."). Any analysis of a driver's consent under Wisconsin's implied consent law must begin with this presumption.
¶ 30. Aside from Brar's consent under the implied consent law, the circuit court found that Brar consented by his responses to the officer's questions.[13] The circuit court discussed an audiovisual recording of the officer's interaction with Brar as well as the officer's testimony. The evidence supports the circuit court's finding, and we conclude it was not clearly erroneous.
¶ 31. The officer testified that Brar responded "of course" in response to the question "Will you submit to an evidentiary chemical test of your blood?" According to the officer, Brar then gave "a statement similar to he didn't want to have his license revocated." As a result, the officer believed Brar affirmatively agreed to the blood draw.
¶ 32. The circuit court found the officer's "testimony to be credible, that Mr. Brar said, when asked more than once, the officer said I need to know, I need you to answer yes or no, will you submit to the test? Mr. Brar said, of course, he would submit. And the officer said that Mr. Brar said, because he didn't want to have his license revoked, or words to that effect." A circuit court's finding of fact that is based on the credibility of a witness is a persuasive factor in assessing whether the finding is clearly erroneous. See Wis. Stat. § 805.17(2) ("Findings of fact shall not be set *704 aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."). And, we have no reason to question the veracity of the officer's testimony in the present case.
1 33. Moreover, the circuit court found, and we agree, that the audiovisual recording of the interaction corroborates the testimony of the officer. Nothing in the recording rebuts the officer's testimony as to Brar's statements. Indeed, the officer's testimony that Brar said "of course" and then something to the effect of "I do not want my license revoked" is supported by the recording.
¶ 34. Accordingly, Brar first consented through his conduct; specifically, he consented by driving on the roads of Wisconsin. The circuit court found he later re-affirmed his consent when he was given the statutory opportunity to withdraw consent at the officer's reading of the Informing the Accused form to him. Based on the officer's testimony as corroborated by the recording of the officer's interaction with Brar, the circuit court's finding that Brar consented was not clearly erroneous.
f 35. Having concluded that Brar consented, we must determine whether his consent was voluntary. We conclude that Brar voluntarily, albeit impliedly, consented when he chose to drive on Wisconsin roads. And, his subsequent statement to the officer, reaffirming his previously-given consent was likewise voluntary. Brar does not argue otherwise; in essence, he contends that the voluntariness of his consent dissipated sometime after he had already consented.
¶ 36. After consenting to the blood draw, Brar asked the officer if he needed to obtain a warrant to *705 draw his blood. The officer shook his head no in response. However, the officer's response did not vitiate the voluntariness of Brar's consent.
¶ 37. After all, the officer did not need a warrant because Brar already had consented. And, the officer was not obligated to explain further than he did; for example, an individual need not be informed of the opportunity to withdraw consent under Wis. Stat. § 343.305(3) in order for consent to be voluntary. See Schneckloth, 412 U.S. at 229 (reasoning, that requiring the State to "affirmatively prove that the subject of the search knew that he had a right to refuse consent, would, in practice, create serious doubt whether consent searches could continue to be conducted"). Even if the import of Brar's question was unclear to the officer, "an officer need not clarify whether an ambiguous statement is meant to withdraw otherwise valid consent to search." See State v. Wantland, 2014 WI 58, ¶ 47, 355 Wis. 2d 135, 848 N.W.2d 810. Accordingly, the officer accurately responded to Brar's question and had no obligation to supply Brar with further information.
f 38. However, even if the officer's response to Brar's questions were unclear, it was insufficient to vitiate Brar's previously-given and subsequently reaffirmed voluntary consent. The voluntariness of consent is examined under the totality of the circumstances. And, the context in which Brar asked whether the officer needed a warrant suggests that Brar voluntarily consented despite the arguably unclear nature of the officer's response. Brar's question about a warrant was not an isolated question; Brar asked the officer numerous questions throughout the encounter, many of which pertained to aspects of the Informing the *706 Accused form. He also repeatedly lamented his guilt. In the context of his interaction with the officer, Brar's one question about the necessity of a warrant was insufficient to render his consent involuntary.
f 39. Moreover, Brar was informed of his opportunity to withdraw consent to a blood draw when the officer read him the Informing the Accused form. The officer asked him to provide a yes or no answer to the question of whether he would consent to a chemical evidentiary test. Earlier, the officer had explained the consequences of refusing a blood draw to Brar. As a result, Brar knew that he had the option of refusing a blood draw, yet he did not refuse. See United States v. Mendenhall, 446 U.S. 544, 559 (1980) (reasoning, "[because] the officers themselves informed the respondent that she was free to withhold her consent substantially lessened the probability that their conduct could reasonably have appeared to her to be coercive"). And, at no point did Brar as much as suggest an unwillingness to have his blood drawn.
f 40. Finally, Brar did not merely acquiesce to being searched. The cases in which courts have concluded consent was involuntary based on an individual's "mere acquiescence" are of no relevance to this case. "[Acquiescence causes Fourth Amendment problems when the acquiescence is made to claimed lawful authority to search, when no such lawful authority exists." Johnson, 299 Wis. 2d 675, ¶ 69 (Roggensack, J., dissenting) (citing Bumper, 391 U.S. at 548-49). Brar asked the officer a straightforward question: whether the officer needed a warrant to conduct a blood draw. The officer, at that point, answered the question accurately; he did not need a warrant because Brar had consented. In contrast to the cases in which courts have concluded an individual merely acquiesced *707 to a search, the officer here did not assert that he would conduct a blood draw with or without Brar's consent. See Bumper, 391 U.S. at 548 ("The issue thus presented is whether a search can be justified as lawful on the basis of consent when that 'consent' has been given only after the official conducting the search has asserted that he possesses a warrant.").
¶ 41. In sum, Brar's "will was [not] overborne" by the officer. See Schneckloth, 412 U.S. at 226. After examining the totality of the circumstances, we conclude that Brar voluntarily consented to a blood draw.
III. CONCLUSION
¶ 42. In light of the foregoing, we conclude that the circuit court's finding that Brar consented to the blood draw was not clearly erroneous. Additionally, we conclude that Brar's consent was voluntary. Accordingly, we affirm the decision of the court of appeals.
By the Court. — The decision of the court of appeals is affirmed.

 State v. Brar, No. 2015AP1261-CR, unpublished slip op. (Wis. Ct. App. July 7, 2016).

 All subsequent references to the Wisconsin Statutes are to the 2013 — 14 version unless otherwise indicated.

 The Honorable John W. Markson of Dane County presided.

 Brar does not contest the validity of the initial stop or his subsequent arrest.

 Brar moved for reconsideration of the circuit court's denial of his motion to suppress after having the audiovisual recording of his interaction with the officer transcribed. Brar noted that the individual who transcribed the recording did not hear Brar say the words "of course." The circuit court concluded that Brar did not meet the criteria for a motion for reconsideration, and therefore denied the motion.

 "Historically, we have interpreted Article I, Section 11 of the Wisconsin Constitution in accord with the Supreme Court's interpretation of the Fourth Amendment." State v. Arias, 2008 WI 84, ¶ 20, 311 Wis. 2d 358, 752 N.W.2d 748.

 " '[T]he taking of a blood sample ... is a search' under the Fourth Amendment." State v. Kozel, 2017 WI 3, ¶ 40, 373 Wis. 2d 1, 889 N.W.2d 423.

 Of course, other constitutional rights may involve different considerations. For example, the United States Supreme Court reasoned: "There is a vast difference between those rights that protect a fair criminal trial and the rights guaranteed under the Fourth Amendment. Nothing, either in the purposes behind requiring a 'knowing' and 'intelligent' waiver of trial rights, or in the practical application of such a require *698 ment suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures." Schneckloth v. Bustamonte, 412 U.S. 218, 241 (1973).

 Our previous cases discussing implied consent clearly establish that an individual has already consented at the time an officer reads a driver the Informing the Accused form. See, e.g., State v. Neitzel, 95 Wis. 2d 191, 203, 289 N.W.2d 828 (1980) ("The entire tenor of the implied consent law is .. . that consent has already been given and cannot be withdrawn without the imposition of the legislatively imposed sanction of mandatory suspension."). "The specific objective of Wis. Stat. § 343.305(4) within the implied consent statutory scheme is to 'advise the accused about the nature of the driver's implied consent.'" State v. Piddington, 2001 WI 24, ¶ 17, 241 Wis. 2d 754, 623 N.W.2d 528 (quoting State v. Reitter, 227 Wis. 2d 213, 225, 595 N.W.2d 646 (1999)).

 We do not address if there always must be an opportunity to withdraw consent before a blood draw is undertaken such as is currently provided in Wis. Stat. § 343.305(3).

 In the present case, Brar was conscious when he was read the Informing the Accused form. And, under Wisconsin's implied consent law, conscious drivers are statutorily given an opportunity to withdraw consent. However, individuals that choose to withdraw their consent are subject to penalties for withdrawing consent. Wis. Stat. § 343.305(9) & (10).

 As we explained in State v. Artic, 2010 WI 83, 327 Wis. 2d 392, 786 N.W.2d 430, we consider numerous factors to determine whether an individual voluntarily consented:
(1) whether the police used deception, trickery, or misrepresentation in their dialogue with the defendant to persuade him to consent; (2) whether the police threatened or physically intimidated the defendant or "punished" him by the deprivation of something like food or sleep; (3) whether the conditions attending the request to search were congenial, non-threatening, and cooperative, or the opposite; (4) how the defendant responded to the request to search; (5) what characteristics the defendant had as to age, intelligence, education, physical and emotional condition, and prior experience with the police; and (6) whether the police informed the defendant that he could refuse consent.
Id., ¶ 33.

 The circuit court stated: "I do find as a matter of fact that Mr. Brar did give consent."