COURT OF APPEALS
DECISION
DATED AND FILED

March 11, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP811**

Cir. Ct. No. **2023TR3773**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

FOND DU LAC COUNTY,

PLAINTIFF-RESPONDENT,

V.

CONOR ALEXANDER NOBLE,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Fond du Lac County: LAURA J. LAVEY, Judge. *Affirmed.*

¶1 NEUBAUER, P.J.[1] Conor Alexander Noble, appeals from a judgment of conviction for operating while intoxicated (OWI), first offense. Noble argues that Wisconsin's Implied Consent Law (ICL) is facially

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

unconstitutional and that his consent to a blood draw was not voluntary. This court disagrees with Noble's challenges and affirms the judgment of conviction.

## BACKGROUND

¶2    Noble was arrested and charged with OWI, first offense, in violation of WIS. STAT. § 346.63(1)(a). Noble moved to suppress the results of his blood test on the ground that the evidence was unconstitutionally seized pursuant to Wisconsin's ICL. At the subsequent motion hearing, Sergeant Matt Riemenschneider and Noble testified, and audiovisual footage from Riemenschneider's body camera was admitted into evidence.

¶3    Riemenschneider testified as follows. On July 7, 2023, at approximately 11:15 p.m., he observed a pickup truck in a wayside parking lot. Riemenschneider made contact with, and identified, two individuals inside the vehicle. Noble was the 21-year-old driver. The female passenger admitted she was underage and had consumed alcohol that night.

¶4    Riemenschneider detected the odor of alcohol coming from the vehicle and observed open intoxicants inside the vehicle. Noble admitted he drank three beers that night.

¶5    Riemenschneider asked Noble to perform standardized field sobriety tests. Noble had six out of six clues on the horizontal gaze nystagmus test; three out of eight clues on the walk-and-turn test, and one out of four clues on the one-leg stand test. Riemenschneider then administered a preliminary breath test

which showed Noble had a prohibited alcohol concentration of 0.12.[2] Riemenschneider arrested Noble for OWI. Riemenschneider told Noble he had "been cooperative" with him and "[he did not] believe it [was] going to be a lengthy process." Per policy, Riemenschneider handcuffed Noble with his hands behind his back, placed him in the squad, and fastened his seatbelt. Riemenschneider read the Informing The Accused (ITA) form to Noble, pursuant to which he asked Noble if he would submit to a chemical test of his blood. Noble asked, "what's that?" Riemenschneider explained "a blood draw, two vials of blood." Riemenschneider testified that he again asked Noble if he would submit to the chemical test, and that Noble responded "Yes." Riemenschneider clarified Noble's response, asking Noble if his answer was "yes?" Noble nodded his head. Riemenschneider then checked the "Yes" box and wrote "verbal" above the box.

¶6    Riemenschneider asked Noble if he had any further questions. Noble said he did not. Riemenschneider then transported Noble to the hospital for the blood draw. At no point did Noble indicate that he did not want to submit to a blood draw.

¶7    Noble testified as follows. He graduated from high school in 2020, three years prior to the arrest. He worked in the architectural sheet metal industry. Since 2021, he attended a union trade technical school taking courses in math and HVAC. Before his arrest, he had interacted twice with law enforcement when he was pulled over for speeding. During his encounter with Riemenschneider he "felt

---

[2] Noble's 0.12 concentration was over the "[p]rohibited alcohol concentration" of 0.08 or more. *See* WIS. STAT. § 340.01(46m)(a) ("If the person has 2 or fewer prior convictions, suspensions, or revocations, as counted under [WIS. STAT. §] 343.307(1), [the prohibited alcohol concentration is] an alcohol concentration of 0.08 or more.").

like" if he didn't cooperate, Riemenschneider might physically touch or hurt him in some way. Noble confirmed that "it was nothing that Sergeant Riemenschneider [actually] did that intimidated [him]" and explained that he "was just intimidated by a big dude next to [him]," and he was afraid of getting in trouble and of the situation he found himself in. Noble remembered being read the ITA form and recalled his answer to the consent question was, "I guess."

¶8 Relevant portions of the audiovisual recording of the stop were played. After listening to Noble's verbal answer to the request to submit to a blood draw, the circuit court stated, "try as I might, I couldn't make out whether it was a 'Yes' or 'I guess.'"

¶9 At the conclusion of the hearing, the circuit court found that, based on Riemenschneider's detection of an odor of alcohol coming from the vehicle, his observation of open intoxicants in the vehicle, Noble's admission that he had consumed three beers that night, the results of the field sobriety tests and the preliminary breath test, Riemenschneider had probable cause to arrest Noble for OWI. The court also addressed whether "I guess" or "yes" was dispositive of showing consent and found "both [responses] are an affirmative acknowledgement that Mr. Noble was in fact consenting to the blood draw request." The court determined, under the totality of the circumstances, that Noble voluntarily consented to the chemical test, and denied Noble's motion to suppress.

¶10 A jury subsequently found Noble guilty of OWI, first offense, in violation of WIS. STAT. § 346.63(1)(a). Noble appeals. [3]

---

[3] Noble does not challenge his arrest for OWI.

# DISCUSSION

## I. Noble's facial challenge.

¶11 Noble contends that the circuit court erred in denying his motion to suppress the results of the warrantless blood draw taken after the officer read the ITA form to him because consent given pursuant to the ICL is unconstitutional. This court rejects Noble's facial challenge.

¶12 The constitutionality of a statute presents a question of law we decide independently. *State v. Weidner*, 2000 WI 52, ¶7, 235 Wis. 2d 306, 611 N.W.2d 684. Statutes are presumed constitutional. *State v. Wood*, 2010 WI 17, ¶15, 323 Wis. 2d 321, 780 N.W.2d 63. "In a facial challenge, the challenger must persuade us that the 'heavy burden' to overcome the presumption of constitutionality has been met, and that there is proof beyond a reasonable doubt that the statute is unconstitutional." *Tammy W.-G. v. Jacob T.*, 2011 WI 30, ¶46, 333 Wis. 2d 273, 797 N.W.2d 854.

¶13 The taking of a blood sample is a search under the Fourth Amendment to the United States Constitution.[4] *State v. Brar*, 2017 WI 73,

---

[4] The Fourth Amendment to the United States Constitution sets forth:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath of affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend IV.

¶16 n.7, 376 Wis. 2d 685, 898 N.W.2d 499. "Warrantless searches are per se unreasonable" under the Fourth Amendment, "subject to several clearly delineated exceptions." *State v. Artic*, 2010 WI 83, ¶29, 327 Wis. 2d 392, 786 N.W.2d 430. One exception "is a search conducted pursuant to consent." *Id.*

¶14 Wisconsin's ICL, WIS. STAT. § 343.305(2), provides that anyone who drives on Wisconsin roads "is deemed to have given consent" to testing of their breath, blood, and urine. Although a driver impliedly consents to take a chemical test, the driver may revoke consent by simply refusing to take the test. Before asking any driver for a specimen sample, a law enforcement officer must read to the driver the ITA form which states that the consequences of refusing the test include revocation of operating privileges and evidentiary consequences. Sec. 343.305(4). It further states the consequences of consenting to the test, i.e., that the results can be used against the suspect in court. *Id.*, *see also State v. Prado*, 2021 WI 64, ¶22, 397 Wis. 2d 719, 960 N.W.2d 869.[5] The ITA form is "designed to inform drivers of the rights and penalties applicable to them." *Id.* (citation omitted).

¶15 The ICL "[e]ssentially … gives those who are capable of responding a choice: submit to the test and risk that the results are presented in [circuit] court,

---

[5] In *Birchfield v. North Dakota,* 579 U.S. 438 (2016), the United States Supreme Court analyzed implied consent laws under the Fourth Amendment and specifically, the constitutionality of criminal penalties applied to a refusal to submit to a blood test without a warrant. The court held that a refusal to submit to a blood test without a warrant can be the basis for a civil penalty—revocation—and that the results can be used against the suspect in court, but the refusal cannot be the basis for a separate criminal charge and penalties. *See Id.*, at 476-77; *see also State v. Forrett*, 2021 WI App 31, ¶10, 398 Wis. 2d 371, 961 N.W.2d 132, *aff'd as modified*, 2022 WI 37, 401 Wis. 2d 678, 974 N.W.2d 422.

or refuse the test and face license revocation and other civil penalties." *Id.*, ¶23, *See* WIS. STAT. § 343.305(9).

¶16    Thus, the ICL does not authorize a warrantless search of a driver's blood by implying, as a matter of law, that every driver has to consent to such a search. Rather, it authorizes a warrantless search only if the driver *chooses* to give the officer "actual consent" after the officer reads the ITA form to the driver. *Prado*, 397 Wis. 2d 719, ¶23 (citing *State v. Padley*, 2014 WI App 65, ¶39, 354 Wis. 2d 545, 849 N.W.2d 867).

> [T]he implied consent law is explicitly designed to allow the driver, and not the police officer, to make the choice as to whether the driver will give or decline to give <u>actual</u> consent to a blood draw when put to the choice between consent or automatic sanctions. Framed in the terms of "implied consent," choosing the "yes" option affirms the driver's implied consent and constitutes actual consent for the blood draw. Choosing the "no" option acts to withdraw the driver's implied consent and establishes that the driver does not give actual consent. Withdrawing consent by choosing the "no" option is an unlawful action, in that it is penalized by "refusal violation" sanctions, even though it is a choice the driver can make.

*Prado*, 397 Wis. 2d 719, ¶23 (citing *Padley*, 354 Wis. 2d 545, ¶39).

¶17    In *Prado*, the Wisconsin Supreme Court determined that the incapacitated driver provision of the ICL was unconstitutional because it presumed that an incapacitated or unconscious driver provided consent, when actual consent is required. *Id.*, ¶¶53-54.

¶18    *Prado*'s central holding that the incapacitated driver provision of the ICL is unconstitutional is not applicable here because Noble was conscious. Nevertheless, the court's discussion of the ICL makes clear that actual consent provided by a conscious driver pursuant to the ICL is constitutional. *See id.*, ¶¶44,

46 (consent must be clear and unequivocal, and evidenced through words, gestures, or conduct).

¶19     The Wisconsin Supreme Court reached the same conclusion in *Brar*, holding that the defendant's consent provided after the officer read the ITA form satisfies the Fourth Amendment's consent exception.

¶20     This court rejects Noble's argument that *Mitchell v. Wisconsin*, 588 U.S. 840 (2019) "implicitly" overrules the precedent set forth in *Brar*. *Brar* involved a conscious suspected drunk driver. *Mitchell* involved an unconscious suspected drunk driver. *See Mitchell*, 588 U.S. at 845. The *Mitchell* court declined to address the constitutionality of the unconscious driver's ability to consent, instead determining that the exigent circumstances rule could provide an exception to the warrant requirement.[6] In limiting its discussion to an examination

---

[6] The United States Supreme Court held that

> [w]hen police have probable cause to believe a person has committed a drunk-driving offense and the driver's unconsciousness or stupor requires him to be taken to the hospital or similar facility before police have a reasonable opportunity to administer a standard evidentiary breath test, they may almost always order a warrantless blood test to measure the driver's BAC without offending the Fourth Amendment. We do not rule out the possibility that in an unusual case a defendant would be able to show that his blood would not have been drawn if police had not been seeking BAC information, and that police could not have reasonably judged that a warrant application would interfere with other pressing needs or duties. Because Mitchell did not have a chance to attempt to make that showing, a remand for that purpose is necessary.

*Mitchell v. Wisconsin*, 588 U.S. 840, 857 (2019).

8

of the exigent circumstances exception, the court left intact Wisconsin's ICL. *See id.* Noble's facial challenge fails.[7]

## II. Noble's consent challenge

¶21    Whether a suspected drunk driver "has consented to a search is initially a question of historic fact." ***Brar***, 376 Wis. 2d 685, ¶13. This court will uphold a circuit court's finding of historic fact unless clearly erroneous. ***Id.*** "Next, we 'independently apply the constitutional principles to the facts as found to determine whether the standard of voluntariness has been met.'" ***Id.*** (quoting ***State v. Phillips***, 218 Wis. 2d 180, 195, 577 N.W.2d 794 (1998)).

¶22    Noble does not argue that the circuit court's determination that he consented in fact to a chemical test was clearly erroneous. Rather, he argues that

---

[7] Noble also claims that conscious OWI suspects have fewer Fourth Amendment protections than unconscious OWI suspects under the ICL and this violates the conscious suspect's right to equal protection.

The right to equal protection of the laws arises from the Fourteenth Amendment to the United States Constitution. *See* U.S. CONST. amend. XIV, § 1 "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." ***Id.*** "To prove an equal protection clause violation, the party challenging a statute's constitutionality must show that 'the state unconstitutionally treats members of similarly situated classes differently.'" ***Waupaca County v. K.E.K.***, 2021 WI 9, ¶33, 395 Wis. 2d 460, 954 N.W.2d 366 (citations omitted). However, "[t]he right to equal protection does not require that such similarly situated classes be treated identically, but rather requires that the distinction made in treatment have some relevance to the purpose for which classification of the classes is made." ***Id.*** (Alteration in original; citation omitted.) Fundamentally, the state must have a rational basis for the different treatment. *See id.*, ¶¶5, 35.

The conscious and unconscious OWI suspects are not similarly situated. As explained in the body of the opinion, a conscious OWI suspect under the ICL is able to make the choice as to whether to give or decline to give *actual* consent to a blood draw when asked by the officer if he or she will submit to a chemical test. The unconscious OWI suspect is not in a position to provide consent, and as such, the ICL does not apply. Instead, a warrant may be required, if exigent circumstances do not apply. These are not similarly situated classes, and the different Fourth Amendment analysis, applying two separate and distinct exceptions to the warrant requirement, reflects that factual difference. Noble's equal protection claim fails.

his consent was not voluntary. We disagree. Again, **Brar** informs our analysis. As Noble does here, Brar argued that his response of, "[O]f course," given in response to a reading of the ITA form, was an involuntary consent. The **Brar** court soundly rejected this argument, holding that the Fourth Amendment's consent exception is satisfied when a defendant answers in the affirmative after the officer has read aloud the ITA form. *See **Brar**,* 376 Wis. 2d 685, ¶¶34-35 ("Brar voluntarily, albeit impliedly, consented when he chose to drive on Wisconsin roads. And, his subsequent statement to the officer, re-affirming his previously-given consent was likewise voluntary.")[8]

¶23    The **Brar** court's reliance on the information provided by the ITA form as grounds for its voluntariness conclusion is directly applicable here. The court noted that Brar was informed of his opportunity to withdraw consent to a blood draw; Brar was asked to provide a yes or no answer to the question of whether he would consent to a chemical evidentiary test, and the form explained the consequences of a refusal. *Id.*, ¶39. "As a result, Brar knew that he had the option of refusing a blood draw, yet he did not refuse." *Id.*

¶24    Despite his consent, Noble argues that the coercive environment rendered his consent involuntary. Again, this court disagrees. In considering the totality of the circumstances, the circumstances surrounding the consent and the characteristics of the defendant are considered; no single factor controls. *Phillips*, 218 Wis. 2d at 197-98. Some of the factors this court considers are

---

[8] A majority of the **Brar** court, (the three-member plurality and the two concurring justices) held that the circuit court properly found Brar had voluntarily consented to have his blood drawn. **State v. Brar**, 2017 WI 73, ¶¶42-43, 47, 376 Wis. 2d 685, 898 N.W.2d 499; **Brar v. Mahoney**, No. 17-CV-790-WMC, 2020 WL 3799159, at *6 (W.D. Wis. July 7, 2020).

(1) whether the police used deception, trickery, or misrepresentation in their dialogue with the defendant to persuade him to consent; (2) whether the police threatened or physically intimidated the defendant or "punished" him by the deprivation of something like food or sleep; (3) whether the conditions attending the request to search were congenial, non-threatening, and cooperative, or the opposite; (4) how the defendant responded to the request to search; (5) what characteristics the defendant had as to age, intelligence, education, physical and emotional condition, and prior experience with the police; and (6) whether the police informed the defendant that he could refuse consent.

*Artic*, 327 Wis. 2d 392, ¶33 (citing *Phillips*, 218 Wis. 2d at 198-203).

¶25     In addressing the first factor, there is no evidence in the record that Riemenschneider used deception, trickery, or misrepresentation to persuade Noble to consent and Noble does not contend otherwise.

¶26     In addressing the second factor, we examine whether the officer threatened or physically intimidated the defendant or "punished" him by the deprivation of something like food or sleep.  Noble argues that "an inherently coercive environment" existed because he "was handcuffed with his hands behind his back and seat-belted in the squad car[] … [h]e could not defend himself if struck[] … [and] [t]he deputy stood within two feet, wearing his badge and firearm, having just placed a shotgun in the front seat."  What Noble describes here is a lawful arrest.  The officer testified that, upon arrest, it is police policy to handcuff and seatbelt a suspect into the back of the squad.  Noble's argument that placing a shotgun in the front seat helped create a coercive environment is unavailing.  Noble neglects the fact that the gun was placed there after moving it out of the back seat so the officer could place Noble into the back seat.  In context, this was not a threatening move by the officer.  Finally, that the officer was in uniform and was within two feet of Noble when he read him the ITA form does not rise to physical intimidation or threatening behavior.  The officer was in

11

uniform because he was on duty and he was within two feet of Noble because the officer was in the front seat and Noble was in the back. The environment Noble found himself in was not "an inherently coercive environment" rather it was typical of a lawful arrest.

¶27 In examining the third factor, we look at whether the conditions attending the request to search were congenial, non-threatening and cooperative, or the opposite. The officer properly read the ITA form to Noble, and when asked by Noble what the test was, the officer stopped reading and explained to Noble that the test he intended to take was a blood draw. Further, the officer let Noble know that because Noble had been cooperative, it would likely not be a lengthy process. The conditions attending the request to search were congenial, non-threatening, and cooperative.

¶28 In the fourth factor, we look at how the defendant responded to the request to search. When asked whether he would submit to a chemical test, Noble verbally replied "Yes" or "I guess" (which we, like the circuit court, find to be a distinction without difference). The officer asked if Noble said "Yes" and Noble nodded his head. Noble's response to the request to search was an affirmative response, and it was given after Noble asked for clarification of which test he was agreeing to have. This demonstrates he was engaged with what the officer was reading.

¶29 The fifth factor requires that we take into account what characteristics the defendant had as to age, intelligence, education, physical and emotional condition, and prior experience with the police. At the time of the arrest, Noble was 21, he had a high-school diploma, he had a job working in the architectural sheet metal industry, he was in tech school for the last two years, he

demonstrated no physical or emotional ailment and, finally, he had two prior contacts with law enforcement during traffic stops. Taking all of this into account, Noble's characteristics at the time did not disadvantage him.

¶30 The sixth factor asks whether the police informed the defendant that he could refuse consent. The ICL requires that the officer read verbatim the ITA form which explains the consequences of refusal and reads in part: "If you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties. The test results or the fact that you refused testing can be used against you in court." Riemenschneider read the form in its entirety which provided Noble with a choice to refuse or submit to a chemical test. That choice squarely satisfies this factor.

¶31 After independently examining these factors, this court concludes under the totality of the circumstances, that Noble consented to the search freely and voluntarily, in the absence of express or implied duress or coercion. *See Artic,* 327 Wis. 2d 392, ¶¶33-34. Just as the court in *Brar* found, so too here, Noble's will was not overborne by the officer. *See Brar*, 376 Wis. 2d 685, ¶41.

¶32 Finally, there is no merit to Noble's argument that the circuit court erred in excluding the statistical evidence regarding Fond du Lac County's number of blood draws compared to its number of breath and urine tests. These statistics

are irrelevant. Noble consented to a blood draw.[9] For these reasons, this court affirms the judgment of conviction.[10]

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[9] Noble, as a separate claim, also argued that the circuit court erred by admitting the ITA form at the suppression hearing as evidence of consent. Because the ICL is not facially unconstitutional and Noble's consent was voluntary, the circuit court did not err in denying Noble's challenge to submission of the ITA form at the motion to suppress hearing. It need not be addressed further.

[10] Noble filed a motion requesting that we convert this case to a three-judge panel and issue a published opinion. As this case presents no new issues of law, Noble's motion for a three-judge panel is denied.