COURT OF APPEALS
DECISION
DATED AND FILED

June 16, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

Appeal No.     **2023AP1834**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2021TR872**

**IN COURT OF APPEALS
DISTRICT III**

CITY OF ANTIGO,

   PLAINTIFF-APPELLANT,

V.

JOHN PAUL FERMANICH,

   DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Langlade County: JOHN B. RHODE, Judge.  *Affirmed*.

¶1      HRUZ, J.[1]   The City of Antigo (the City) appeals an order granting John Paul Fermanich's motion to suppress blood test evidence based upon a determination that Fermanich's consent to a blood draw was coerced.  The City

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24).  All references to the Wisconsin Statutes are to the 2023-24 version.

argues that the circuit court erred by granting the motion because Fermanich's consent was freely and voluntarily given. For the reasons that follow, we affirm.

## BACKGROUND

¶2 On May 7, 2021, at approximately 9:25 p.m., City of Antigo Police Officer Levi Barske observed a vehicle, later determined to be operated by Fermanich, with a defective passenger side headlamp near South Superior Street and Forrest Avenue.[2] After Barske followed Fermanich's vehicle for about two blocks with his emergency lights activated, Fermanich eventually pulled over into a parking lot. Barske testified that he observed clues that Fermanich was intoxicated, including bloodshot eyes, slurred speech, the lighting of a cigarette inside the vehicle, and Fermanich having an odor of intoxicants. Fermanich stated that he was coming from a friend's house and that he "was drinking" there. While Fermanich underwent standardized field sobriety tests, Barske observed multiple clues of impairment. Barske then sought consent from Fermanich for a preliminary breath test, which gave a Blood Alcohol Concentration (BAC) reading of 0.159. Fermanich was placed under arrest for operating a motor vehicle while intoxicated (OWI).

¶3 Officer Barske then told Fermanich: "I'm not taking you to jail. You will be able to go home. We will just have to work on a sober driver for you then. So what we do from here I take you to the hospital, get a blood draw, *and then I*[*'ll*] *release you*." (Emphasis added.) Barske placed Fermanich in the back of his squad

---

[2] We pause here to note the City's counsel's failure to comply with aspects of the Rules of Appellate Procedure. Throughout her brief-in-chief, counsel frequently fails to include record citations after each sentence containing a factual proposition. Such a practice does not constitute "appropriate references to the record" as required by WIS. STAT. RULE 809.19(1)(d). We caution counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

car, searched Fermanich's vehicle, issued the OWI citation, and read Fermanich the Informing the Accused Form (ITAF). Fermanich asked a couple of questions, such as what "evidentiary" meant, but shortly thereafter he said, "yeah," when asked if he consented to the blood draw. Barske drove Fermanich to Aspirus Langlade Hospital for a blood draw, which revealed that Fermanich's BAC was above the legal limit.

¶4 Fermanich was charged with OWI, contrary to WIS. STAT. § 346.63(1)(a), and operating a motor vehicle with a prohibited alcohol concentration, contrary to § 346.63(1)(b), both as first offenses.

¶5 Fermanich moved to suppress the evidence obtained as a result of the blood draw, alleging that Officer Barske had coerced him into giving consent to draw his blood. At the motion hearing, only Barske testified, and two exhibits were admitted, including the ITAF and a DVD of the relevant Antigo Police Department squad camera video. At the conclusion of the hearing, the circuit court invited additional briefing, which the parties submitted.

¶6 In a written decision, the circuit court adopted Fermanich's argument. Namely, it concluded that "the exact words used by Barske a few minutes before he read the ITAF properly and correctly to Fermanich suggest[ed] Fermanich had no choice but to submit to the blood draw," insomuch as he "would only be released after he" did so. The court determined that although Barske used "kind/reassuring words" in speaking with Fermanich, "by dangling the lure of release at the end of his words," "Fermanich's consent to the blood draw was not voluntarily and freely given." The court suggested that Fermanich's consent was coerced by making his

freedom from continuing law enforcement custody contingent on having his blood drawn.[3]

¶7      Accordingly, the circuit court granted Fermanich's motion to suppress the evidence from the blood draw and dismissed the case.[4]  The City now appeals.

## DISCUSSION

¶8      On appeal, the City contends that the circuit court erred by granting Fermanich's motion to suppress because Fermanich's consent to the blood draw was freely and voluntarily given.  The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV.  Blood draws are searches under the Fourth Amendment.  *State v. Blackman*, 2017 WI 77, ¶53, 377 Wis. 2d 339, 898 N.W.2d 774.  The Fourth Amendment is not violated by a warrantless search where consent to search is freely and voluntarily given.  *State v. Phillips*, 218 Wis. 2d 180, 196, 577 N.W.2d 794 (1998).

¶9      We review a motion to suppress, as well as the voluntariness of consent, applying a two-step standard of review.  *State v. Eason*, 2001 WI 98, ¶9,

---

[3] The City did not develop an argument—either at the suppression hearing or in its supplemental briefing following the hearing—that the nature of Officer Barske's statements was inherently not coercive, irrespective of the nature of the exchange between Barske and Fermanich. It merely stated, in a conclusory fashion, that "Officer Barske did not coerce the defendant into agreeing to submit to the blood draw by his … statement … prior to reading the [ITAF]."

[4] We note that the City objected to Fermanich's proposed order granting his motion to suppress the blood test results on the basis that the proposed order did not include language to dismiss the underlying citation.  Apparently, the City was conceding that without the blood test results, there was no viable basis on which to continue the case against Fermanich—either as an OWI or an operating with a prohibited alcohol concentration.  The circuit court's order granting the motion to suppress stated that the case was dismissed, though it did not specify whether the case was dismissed with prejudice.

245 Wis. 2d 206, 629 N.W.2d 625; *Phillips*, 218 Wis. 2d at 196. First, we review the circuit court's findings of historical fact, and we will uphold them unless they are clearly erroneous. *Eason*, 245 Wis. 2d 206, ¶9. "[A] finding of fact is clearly erroneous when 'it is against the great weight and clear preponderance of the evidence.'" *Phelps v. Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615 (quoting *State v. Arias*, 2008 WI 84, ¶12, 311 Wis. 2d 358, 752 N.W.2d 748). Second, we "review the application of constitutional principles to those facts *de novo*." *Eason*, 245 Wis. 2d 206, ¶9. As applicable here, the question of whether consent was given is an evidentiary fact; whether consent was voluntarily given is a legal conclusion.[5] *State v. Brar*, 2017 WI 73, ¶13, 376 Wis. 2d 685, 898 N.W.2d 499.

¶10 Importantly, the City bears the burden of proving, by clear and convincing evidence, that Fermanich's consent was given freely and voluntarily. *See Phillips*, 218 Wis. 2d at 197. The consent must be a "free, intelligent, unequivocal and specific consent without any duress or coercion, actual or implied." *State v. Hartwig*, 2007 WI App 160, ¶7, 302 Wis. 2d 678, 735 N.W.2d 597 (citation

---

[5] In their briefing, the parties sometimes seem to confuse whether the circuit court's determination that Fermanich's consent to the blood draw was not voluntarily given was a factual finding or a legal determination. Namely, Fermanich states that "there is no reason to conclude that the court made a 'clearly erroneous' decision or acted in derogation of the 'great weight and preponderance of the evidence'" and that the court's conclusion was not "clearly erroneous." He even invokes the court's superior position to assess Officer Barske's credibility. The City, meanwhile, at times correctly observes that the determination as to whether Fermanich's consent was voluntary is a question of law, but it then also argues that the court's "findings" regarding the coercive nature of Barske's statements "are clearly erroneous," with the court reaching an incorrect "inference" from those statements.

In this opinion, we apply the correct standards of review, as outlined above. Here, no one disputes the facts underlying the encounter in any material respects, including what was said and when it was said. Likewise, it is undisputed that consent *was* given. Accordingly, the ultimate issue is whether the totality of the circumstances establish that the consent was freely and voluntarily given or coerced, which is a legal conclusion that we review de novo.

omitted). Consent is not voluntary if it is "no more than acquiescence to a claim of lawful authority." ***Bumper v. North Carolina***, 391 U.S. 543, 549 (1968).

¶11 Voluntariness is determined by looking at the totality of the circumstances, including events surrounding the consent and the character of the individual whose consent is sought. ***State v. Wallace***, 2002 WI App 61, ¶17, 251 Wis. 2d 625, 642 N.W.2d 549. No single criterion controls. ***Id.*** The Wisconsin Supreme Court has provided the following nonexclusive list of factors for courts to consider when determining the voluntariness of consent:

> (1) whether the police used deception, trickery, or misrepresentation in their dialogue with the defendant to persuade him to consent; (2) whether the police threatened or physically intimidated the defendant or "punished" him by the deprivation of something like food or sleep; (3) whether the conditions attending the request to search were congenial, non-threatening, and cooperative, or the opposite; (4) how the defendant responded to the request to search; (5) what characteristics the defendant had as to age, intelligence, education, physical and emotional condition, and prior experience with the police; and (6) whether the police informed the defendant that he could refuse consent.

***State v. Artic***, 2010 WI 83, ¶33, 327 Wis. 2d 392, 786 N.W.2d 430; *see **Phillips***, 218 Wis. 2d at 198-203.

¶12 The City advances two principal arguments regarding the voluntariness of Fermanich's consent to the blood draw.[6] The City primarily argues

---

[6] The City largely ignores the ***Phillips*** factors and instead focuses on the "totality of the circumstances." *See **State v. Phillips***, 218 Wis. 2d 180, 198-203, 577 N.W.2d 794 (1998). The only factor it addresses, in passing, is the first factor, arguing that Officer Barske did not use deception, trickery, or misrepresentation in his dialogue with Fermanich to persuade him to consent because Barske's statement was true and, therefore, could not be deceptive. The City bears the burden of showing voluntariness by clear and convincing evidence. ***Id.*** at 197. As a result, the only factor we expressly address here is whether Barske's statement was deceptive. By failing to address the other factors, the City has failed to show that they support a determination that Fermanich's consent was voluntary.

that Officer Barske's allegedly coercive statement was made prior to his reading the ITAF to Fermanich, and, therefore, it could not have rendered the subsequent consent involuntary. According to the City, a reasonable person, after hearing the ITAF, would have necessarily understood that refusal remained an option.[7]

¶13 We conclude that the City's argument is conclusory and unsupported by evidence in the record. While it is possible that a person could have revised his or her understanding of the law after being read the ITAF, we conclude the City's argument improperly discounts the information already presented to Fermanich. Officer Barske's categorical declaration was that Fermanich *was* going to be taken to the hospital for a blood draw and would *only then* be released. We agree with the circuit court that this statement "implies, if not expresses, that (1) the blood test is inevitable and (2) [Fermanich] would not be released unless he first submitted to the test."

¶14 The City additionally argues that Officer Barske's statement was not coercive because it was factually accurate, at least in Barske's mind. In support, the City claims that the circuit court misapplied ***Blackman***, by distinguishing it on the

---

[7] Relatedly, the City contends that the circuit court failed to properly evaluate the totality of the circumstances and instead relied on an incomplete analysis. This argument is unpersuasive. The City provides no evidence that the court failed to consider the totality of the circumstances beyond the fact that it ruled in Fermanich's favor. To the contrary, the record demonstrates that the court explicitly engaged in an analysis that considered all the relevant facts. The court expressly characterized the cordial and cooperative nature of the entire encounter. It then noted that "the exact words used by Barske a few minutes before he read the ITAF properly and correctly … suggest[ed] Fermanich had no choice but to submit to the blood draw," at least if he wanted to be released from custody that day. This statement reflects the court's consideration of *both* the pre-ITAF statement and the subsequent reading of the form, directly addressing the events that the City claims were ignored.

7

ground that the officer's statement in that case was false, whereas Barske's statement here was true.[8] *See Blackman*, 377 Wis. 2d 339, ¶64.

¶15    This argument is flawed for two reasons.  First, it improperly elevates the subjective truthfulness of the statement to a dispositive factor in the voluntariness analysis.  However, as recognized in both *Phillips* and *Blackman*, the controlling inquiry is whether the defendant's consent was voluntary under the totality of the circumstances—not whether the officer's statement was technically accurate.  *See Phillips*, 218 Wis. 2d at 197-98; *Blackman*, 377 Wis. 2d 339, ¶57.  As the circuit court noted, and as the law clearly states, even an unintentional misrepresentation can render consent involuntary if it exerts coercive pressure.  *See generally Blackman*, 377 Wis. 2d 339, ¶¶62-63.

¶16    More importantly, the purported "truth" of Officer Barske's statement is contingent on the very consent at issue.  That is to say, these words assumed that Fermanich's blood would be drawn.  Notably, Fermanich was never informed, even after being read the ITAF, that if he exercised his right to refuse the blood draw, he would still be released from custody.  Thus, the statement's accuracy in Barske's mind does not negate its coercive effect.  Rather, it highlights the extent to which it may have misled Fermanich regarding his actual choice under the law.  The City's only response to the foregoing is to fault Fermanich for not asking more clarifying questions after being read the ITAF.  Fermanich, however, was not obligated to do so.

---

[8] The City contends that the circuit court's conclusion fails to give due weight to Officer Barske's words leading up to these comments—namely, "I'm not taking you to jail.  You will be able to go home.  We will just have to work on a sober driver for you then."  We fail to see how this language inures to the City's benefit in establishing the voluntariness of Fermanich's consent to the blood draw, which became tied to any offer made in Barske's comments.

¶17    For these reasons, the City's arguments fail. To be sure, we view this as a close case. But that makes the burden of proof determinative. The City has not met *its* burden of demonstrating, by clear and convincing evidence, that Fermanich's consent to the warrantless blood draw was freely and voluntarily given. Given the totality of the circumstances, it appears that his consent was not the product of an unconstrained choice but instead resulted from express or implied coercion regarding Fermanich's freedom from continuing law enforcement custody. Accordingly, the blood draw constituted an unlawful search, and the circuit court correctly granted Fermanich's suppression motion.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.